Before TURNAGE, P.J., and SHANGLER and LOWENSTEIN, JJ.

**STATE of Missouri, Respondent,**

v.

**Charles M. STUTTS, Appellant.**

**No. WD 37604.**

Missouri Court of Appeals, Western District.

Jan. 27, 1987.

TURNAGE, Presiding Judge.

Charles M. Stutts was found guilty by a jury of one count of rape and two counts of sodomy. By its verdict the jury assessed punishment at 100 years on each count. Pursuant to section 558.026.1, RSMo 1984 Cum.Supp., the court imposed consecutive sentences of 100 years on each of the three counts.

Stutts contends he is entitled to a new trial because of improper final argument that led the jury to minimize its role in sentencing. Reversed and remanded.

In the early morning hours of July 27, 1984 a man broke into the home of an elderly woman in Clay County.[1] The woman was in her bedroom when she heard the man break in. She tried to get to the bedroom door to prevent him from entering, but he beat her to the door and forced his way into the bedroom. The man was clad in shorts and socks. The man raped and sodomized the woman in both the bedroom and bathroom.

1. This case was sent to Boone County on a change of venue and the Honorable John Hutcherson, Associate Circuit Judge of Clay County, tried the case in Boone County.

The woman recognized the man, because he had previously done work around her house as an employee of a contractor. At trial the woman positively identified Stutts as her assailant. In addition, a palm print found in the bathroom was identified as that of Stutts and hairs found in the house were consistent with hair samples taken from Stutts.

At trial the state introduced photographs of footprints found in the victim's living room. The photographs were made using an oblique white light, with an ultraviolet filter on the camera. These photographs were compared with impressions made of Stutts' feet, and an expert testified the prints in the living room were consistent with the impressions taken from Stutts' feet.

Stutts does not question the sufficiency of the evidence, but contends the court should have declared a mistrial because of an incident during final argument encouraging the jury to minimize its role in sentencing. The transcript of the incident complained of follows:

MR. CHANCELLOR [ASSISTANT PROSECUTING ATTORNEY]: Now, when you find him guilty in all three cases, you have to decide punishment. Remember, I said you have two choices—life imprisonment or a term of years, and no less than five years. You have the ability to give him any number of years you want. Remember, your verdict is a recommendation to the Court. The Judge can lower whatever verdict you—

MR. DUCHARDT [DEFENSE COUNSEL]: Your Honor, I'll have to object to that. I don't think that's proper argument.

THE COURT: Overruled.

MR. DUCHARDT: Your Honor, that is not the law. That is not a proper area for the jury to consider. The jury is considering what type of situation on this, and they should only be concerned with what the law is, not concerning anything that the Court may or may not do.

THE COURT: Of course I'm not bound by their decision.

MR. DUCHARDT: Your Honor, again—

THE COURT: Approach the bench, gentlemen.

(Counsel approached bench):

THE COURT: Are you of the opinion I cannot sentence him to less time than what they give him?

MR. DUCHARDT: No, I'm not of that opinion. I ask the Court for a mistrial because of the statement the Court has now made to the jury.

THE COURT: Mistrial is denied. Mr. Chancellor, move on, please.

(In the hearing of the jury):

THE COURT: Proceed.

MR. CHANCELLOR: The Court can lower whatever sentence you—

MR. DUCHARDT: Objection, Your Honor.

THE COURT: Overruled. Proceed.

MR. CHANCELLOR: The court cannot exceed the verdict you bring back.

No further statements were made referring to the power of the court to reduce the sentence imposed by the jury.

Stutts makes an argument similar to that recognized in *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), in contending that the prosecutor's argument to the jury that their verdict was only a recommendation to the court was an improper attempt to induce the jury to disregard its duty. The state contends review must be for plain error, because the objection did not completely set out the grounds now urged.

In *Caldwell,* the Supreme Court reversed a capital conviction on the grounds that the trial court permitted the prosecutor to argue to the jury that the state Supreme Court automatically reviewed all death sentences. In *Caldwell* the prosecutor's argument misled the jury as to the nature of the state Supreme Court's role in the sentencing process. 105 S.Ct. at 2646–47 (O'Connor, J. concurring).

Unlike the facts in *Caldwell*, in this case the prosecutor did not misstate the substantive law. Section 557.036.2, RSMo Cum.Supp.1984, requires the court to "instruct the jury as to the range of punishment and upon a finding of guilt to assess and declare the punishment as a part of their verdict ..." (except in instances not applicable here). The court can then reduce the sentence. § 557.036.3, RSMo Cum.Supp.1984. While the prosecutor's statement was thus technically correct, the vice in telling the jury of the judge's power to reduce the sentence is that it leads the jurors to believe that their assessment of punishment is of little or no importance. This, in turn, can lead to a verdict that does not accurately reflect the jury's view of the proper punishment. The question is whether the technically correct statements of the law made to the jury by prosecutor and court in this case so misled the jury as to require reversal under *Caldwell*.

Two recent cases guide the court in applying the *Caldwell* decision.

*State v. Roberts*, 709 S.W.2d 857, 869 (Mo. banc 1986), involved a prosecutor's argument that a verdict for capital punishment would serve only as a recommendation to the trial court. The *Roberts* Court distinguished *Caldwell* on the grounds that the *Caldwell* prosecutor incorrectly stated the law, while the *Roberts* prosecutor stated the law correctly. Despite this distinction, the *Roberts* Court recognized that even a correct statement of the law may be used so as to alter a jury's sense of responsibility for sentencing. Accordingly, the Court recommended that prosecutors should avoid argument about the possibility of the sentence being lowered. 709 S.W.2d at 869. However, the *Roberts* Court refused to reverse, since the defense had not objected to the prosecutor's argument, and the Court found no plain error.

In *Darden v. Wainwright*, ⸺ U.S. ⸺, 106 S.Ct. 2464, 2473, n. 15, 91 L.Ed.2d 144 (1986), the Court further clarified the basis for its *Caldwell* holding. The Court distinguished *Caldwell* from the *Darden* case (in which the court denied habeas corpus), because the *Caldwell* argument presented "an intolerable danger that the jury [did] in fact choose to minimize the importance of its role." *Id.* (quoting *Caldwell*, 105 S.Ct. at 2641–42). The *Darden* court stated that "*Caldwell* is relevant only to certain types of comment—those that mislead the jury as to its role in the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision." 106 S.Ct. at 2473, n. 15. The Court further distinguished *Darden* from *Caldwell*, in that the trial court in *Darden* did not voice approval of the prosecutor's argument.

The instant case shares both features of *Caldwell* that were lacking in *Darden:* encouragement to the jury to undervalue its role in sentencing and endorsement by the trial court of the prosecutor's argument.

Moreover, the trial court's actions also make this case more analogous to *Caldwell* than to *Roberts*. In contrast to the facts in *Roberts*, the argument in this case drew an immediate objection, which the court overruled. Following the ruling defense counsel told the court in the hearing of the jury that the argument was not a proper area for the jury to consider and the jury should not consider anything the court might or might not do. The court at that point stated in the hearing of the jury, "Of course I am not bound by their decision." Thereafter, a colloquy occurred at the bench, apparently out of the hearing of the jury. At that point, counsel moved for a mistrial because of the court's statement.

The prosecutor then closed his concluding argument to the jury by stating, "He deserves every year you can possibly give him. There is no limit to it in this type of case. He deserves every year the twelve of you agree on. And I ask you to give it to him, give it to him in all three cases, and give it to him hard."

Not only did the prosecutor make the type of argument criticized in *Roberts*, but the more egregious error in this case oc-

curred when the court stated in the hearing of the jury that the court was not bound by their decision. Thus, this case transcends the *Roberts* case, in which the prosecutor merely made an improper argument, because in this case the court endorsed the prosecutor's statement. Therefore, the jury knew from the court's own statement that whatever sentence they gave was not binding on the court. The court's statement, coupled with the prosecutor's urging that the jury give Stutts every year it could "possibly give him," could only have left the jury with the impression that it did not matter what sentence they decided on, because the court could reduce it, anyway.

While no non capital case has been found in which the argument made here was used, this court does not see any distinction between a rule applicable to a capital case and this case. This is especially true in view of the court's remark, which carries an authority with the jury far beyond any argument by counsel. Also, in view of the length of the sentences the jury assessed, it cannot be said that the jury did not minimize its role in sentencing.

This court finds that plain error was committed, resulting in manifest injustice, when the court overruled the objection to the prosecutor's argument and told the jury that the court was not bound by their sentencing decision. There is no doubt that the court's remark altered the jury's sense of responsibility for the sentence they were to assess by their verdict. This made the trial fundamentally unfair.

Stutts also contends that there was insufficient foundation for introduction of the ultraviolet footprint photographs into evidence. Due to the disposition of Stutts' first point, it is unnecessary to decide whether the state laid a satisfactory foundation; however, in retrial the State would do well to eliminate all doubt by more careful attention to the foundation required for admitting ultraviolet photographs. *See generally,* 3 C. Scott, Photographic Evidence § 1414 (2d ed. 1969).

The judgment is reversed, and this cause is remanded for a new trial.

All concur.