**STATE of Missouri, Respondent,**

v.

**John HUDSON, Appellant.**

**John HUDSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 58389, 59630.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 10, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 10, 1992.

Application to Transfer Denied
Feb. 25, 1992.

478

J. Gregory Mermelstein, Columbia, for appellant.

William L. Webster, Atty. Gen., Geoffrey W. Preckshot, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

This case is a consolidated appeal of defendant's four convictions of robbery in the first degree, § 569.020 RSMo 1986, and

from the denial of his Rule 29.15 motion for post conviction relief. The court sentenced defendant to serve ten years imprisonment for each conviction. Three convictions run concurrently with each other and consecutive to the first.

Defendant relies on six points of error. The first challenges the sufficiency of the state's evidence. The second raises a *Batson* claim. The third alleges the state impermissibly shifted the burden of proof to defendant during closing argument. The fourth claims the court committed plain error by allowing the state to present evidence of drug use by defendant and his companion. The fifth claims the court committed plain error in giving an instruction patterned after MAI–CR3d 302.04, defining reasonable doubt. The last alleges, and the state concedes, the court erred in determining defendant's amended Rule 29.15 motion was untimely. Defendant also argues his trial counsel was ineffective for failing to strike two veniremen who knew state's witness Sergeant Adams. We affirm.

When reviewing defendant's challenge to the sufficiency of the evidence to sustain his convictions, we view the evidence and all reasonable inferences therefrom in the light most favorable to the state and disregard all contrary evidence. *State v. Livingston*, 801 S.W.2d 344, 345 (Mo. banc 1990). When determining whether there was substantial evidence to support the jury's verdict, we do not weigh the evidence and substitute our judgment in place of the jury's. *Id.* Applying these standards we find the following evidence.

On June 26, 1989, defendant's mother gave Brian Ward $150 with instructions to recover a television and VCR. Defendant and Ward pawned the items earlier for drug money. Instead of redeeming the pawn tickets, Ward bought more drugs with the money. Both defendant and Ward consumed the drugs.

On June 27, 1989, defendant and Ward were searching for a means of replacing the spent money. While walking in the area of Delmar and Old Bonhomme in University City, they decided to look for some-

one to rob. At approximately 9:54 p.m., they entered the Aish Hatorah Center. Defendant led the way carrying a B.B. gun. Four women were inside sitting at a table in a bible study session. Defendant placed the gun against the back of the neck of one of the women and demanded all their purses. The women froze. The men grabbed the purses and fled towards Kaufman Park. One of the women called the police.

Meanwhile, an off-duty police officer, Sergeant Adams, was on his way to work. While stopped at the intersection of Blackberry and Gay, he saw a man running. Seconds later he saw a second man running and carrying two or three large brown handbags. Sergeant Adams recognized defendant as the second man. He drove to a pay phone and discovered a robbery had occurred. Adams told the dispatcher he saw two black males running towards Kaufman Park on Blackberry and one of the men was John Hudson.

Shortly thereafter, the men were apprehended. Defendant's pockets contained change totalling $4.33 and two pawn tickets. He was not wearing shoes. The police conducted a street line-up. Two of the women identified both men. Rabbi Grunberger also identified the men as two men he saw walking in front of the Aish Hatorah Center minutes before the robbery. The police followed the path the men took from the center to where they were ultimately apprehended and found the four purses. The shoes and gun were never found. The police obtained Ward's fingerprint from a credit card. Ward entered guilty pleas to four charges, two armed robberies and two armed criminal actions. Ward testified for the state after pleading but before sentencing.

I

■ Defendant contends the evidence upon which he was convicted is insufficient to support the convictions. Defendant argues: (a) the testimony of the four women did not prove his participation in the robbery because their description and identification of the robbers was irreconcilably conflicting; (b) Ward's testimony was self-

serving, incredible and conflicted with the women's testimony; and (c) there is no other substantial evidence in the record proving defendant's guilt beyond a reasonable doubt.

The evidence to prove defendant's guilt includes the following direct and circumstantial evidence. Two of the women identified defendant as one of the robbers both at a street line-up and at trial. Ward also identified defendant as the other robber. Defendant's presence outside the Aish Hatorah Center minutes before the robbery and his presence six blocks from the robbery approximately six minutes after it occurred while carrying handbags and running behind another man was strong circumstantial evidence of guilt.

The testimony of the witnesses conflicted in several respects. The witnesses did not agree whether defendant wore a red or blue shirt, was taller than Ward, spoke during the robbery, or how many purses defendant grabbed. The conflicting and inconsistent statements made by the witnesses reflected on their memory and the quality of their evidence, not sufficiency. The weight and credibility to be given to their testimony was a proper issue for the jury to determine. *State v. Giffin*, 640 S.W.2d 128, 131 (Mo.1982). The witnesses all agree defendant was one of the robbers and he wielded the gun. A submissible case was presented to the jury. *See State v. Murphy*, 753 S.W.2d 90, 91 (Mo.App. 1988).

## II

■ Defendant alleges the court erred in ruling on defendant's claim the state used peremptory challenges in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), "IN THAT THE STATE'S EXPLANATION FOR THE STRIKES—THAT THE VENIREPERSONS WERE POSTAL WORKERS—WAS MERELY A PRETEXT FOR DISCRIMINATION AND WAS NOT A LEGITIMATE RACE–NEUTRAL REASON FOR THE STRIKES."

Before the court swore in the jury panel defendant made a *Batson* objection. Defense counsel stated defendant was black and the state used three of its six peremptory challenges to strike black venirepersons McCloud, Morris and Watson. Defendant did not challenge the state's right to strike Watson. The court noted six of twenty-four persons on the venire panel were black. The court then ruled defendant did not make a prima facie case of discrimination because the state only struck three out of six blacks.

In order to preserve a record for review and despite having found no prima facie case, the court allowed the state to provide neutral explanations for its challenges to McCloud and Morris. The prosecutor stated he struck McCloud because of his occupation as a postal worker *and* his demeanor in responding to questions. The prosecutor said members of the postal service are "too liberal in their leanings, and also much too tolerant of activities that could be considered criminal...." The prosecutor based this observation on his professional experience *and* the fact members of his family were members of the postal service. The prosecutor struck Morris, a postal worker for the same reason. The court found these explanations were sufficient and ruled there was no systematic exclusion of blacks from the panel. This ruling is the foundation upon which defendant's point on appeal rests.

Defendant argues the state had no rational basis, without individually questioning McCloud or Morris, to conclude they would be liberal in their leanings or tolerant of activities which could be considered criminal. During voir dire McCloud responded to a general question and Morris did not speak. Defendant relies upon *State v. Smith*, 791 S.W.2d 744 (Mo.App. 1990). In *Smith*, we held defendant's *Batson* challenges were untimely. *Id.* at 748. In dicta, a divided panel of this court found the state's explanation for striking government workers was unacceptable where "the only explanation the prosecutor gave for striking governmental employees was because he had had bad experiences and results with them." *Id.* at 749.

We find *Smith* is not controlling and the court did not err in this case by accepting the state's neutral explanations as legitimate. We recognize occupation related explanations are susceptible to abuse as the court in *Smith* found. Here in contrast to *Smith,* the prosecutor engaged in a detailed explanation of why he believed postal workers would be poor jurors for the state. The prosecutor believed, based upon his personal dealings with postal workers including family members, a liberal attitude "was instilled" in postal workers. The experience based rationale involved more than mere rejection based on employment. We defer to the trial court's assessment of the credibility of the prosecutor and his explanation. *State v. Payton,* 747 S.W.2d 290, 293 (Mo.App.1988).

■ Additionally, defendant did not respond to the neutral reasons given by the state to support a finding of pretext or argue the reasons were only facially neutral. Once the state came forward with neutral explanations, defendant had the obligation to demonstrate the state's proffered explanations were pretextual. *State v. Antwine,* 743 S.W.2d 51, 64 (Mo. banc 1987). Defendant had the opportunity to respond but failed to do so. The ultimate burden of persuasion of showing a systematic pattern of excluding qualified black veniremen lies with and never shifts from the defendant. *Id.* at 63. Point denied.

### III

■ Defendant alleges the court erred in overruling his motion for new trial on the ground the state impermissibly shifted the burden of proof to him and argued matters not in evidence when the prosecutor asked why defendant: (a) did not produce his shoes; (b) did not call his brother or Charles Hall as witness; and (c) referred to defendant's opening statement. Defendant testified and relied on the defense of mistaken identity.

Ward testified on cross-examination defendant was wearing Ward's black Addidas tennis shoes prior to the robbery. Ward testified on direct examination defendant was no longer wearing the shoes at the street lineup; he ran without his shoes. Defendant claimed he walked to Milan Park wearing socks but no shoes to watch a baseball game. He did not wear shoes because "I was just sitting around, I wasn't doing nothing." Defendant stated he was walking home from the park when a police officer pulled up, got out of the car, pointed a gun at him and told him to freeze. In response, defendant fled and was later apprehended without shoes. Defendant denied losing the shoes in the chase. Defendant testified Ward's black Addidas were at his home.

During closing the prosecutor argued: "Those shoes, according to defendant's own statement are still at his house. Why aren't those shoes here?" The court overruled an objection that the state could have obtained a search warrant and further, the state had the burden to produce the shoes.

The burden was on the state to prove defendant's participation in the robbery. The state met its burden by offering the testimony of victims, the other robber and a police officer. Defendant denied his participation and claimed to have exculpatory physical evidence in his possession. Defendant brought his credibility into issue by taking the witness stand and testifying. *State v. Henton,* 753 S.W.2d 19, 21 (Mo. App.1988). His testimony invited the state's argument. The argument was proper.

■ Defendant also alleges the prosecutor shifted the burden of proof when he asked why defendant did not call his brother or Charles Hall as witnesses. The court sustained an objection to the reference to Charles Hall. Defendant requested no further relief and the court granted none. Defense counsel asked the reference to defendant's brother be stricken from the record. The court sustained the objection and instructed the jury to disregard the prosecutor's comment. Defendant is not in a position to now complain the court erred in failing to grant further relief on these matters. He received all the relief he requested. *State v. Cummings,* 765 S.W.2d 366, 370 (Mo.App.1989).

This rule of law also disposes of defendant's complaint regarding the prosecutor's reference to a variance between defendant's opening statement and testimony. The court ultimately sustained defendant's objection as to the form of the argument after overruling it twice. Again defendant did not ask for further relief.

We find the court rulings did not improperly shift the burden of proof.

## IV

Defendant alleges the court committed plain error in allowing the state to argue in opening statement and closing argument and to present evidence at trial regarding defendant's purchase and use of drugs with Ward. Defendant argues this constituted evidence of an uncharged crime and had no legitimate tendency to establish defendant's guilt. Under plain error review, defendant bears the burden of demonstrating the court committed an error which "so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected." *State v. Hornbuckle,* 769 S.W.2d 89, 93 (Mo. banc 1989). Moreover, "Where guilt is established by overwhelming evidence, no injustice or miscarriage of justice results from a refusal to invoke the plain error rule." *State v. Meyers,* 770 S.W.2d 312, 315 (Mo.App.1989).

This claim fails for several reasons. First, defendant by his own testimony on direct examination introduced evidence of his drug consumption with Ward. Second, admission of other crimes is admissible where it has a legitimate tendency to establish defendant's guilt of the crime charged. *State v. Sweeney,* 728 S.W.2d 629, 632 (Mo. App.1987). Here, the evidence tended to establish motive.

## V

Defendant alleges the court committed plain error in giving Instruction No. 4, patterned after MAI–CR3d 302.04, defining reasonable doubt. Defendant argues the instruction unconstitutionally diminishes the meaning of proof beyond a reasonable doubt. The Supreme Court of Missouri has recently upheld the language in question. *State v. Griffin,* 818 S.W.2d 278 (Mo. banc 1991). Thus, the court did not commit error, plain or otherwise.

## VI

Defendant alleges, and the state concedes, defendant timely filed his amended Rule 29.15 motion within sixty days after the filing of the transcript in the direct appeal. *See State v. White,* 798 S.W.2d 694 (Mo. banc 1990). On this issue the motion court's ruling was erroneous. However, this does not end our inquiry because the motion court held an evidentiary hearing and made alternative findings of facts and conclusions of law on the merits of defendant's claim. Defendant alleges his counsel was ineffective for failing to strike for cause or exercise peremptory challenges against veniremen Campbell and Dean who indicated on voir dire they knew state's witness Sergeant Adams. The relevant portions of the court's findings are:

20. [Defense counsel] left panelists Campbell and Dean on the jury as a matter of trial strategy for the following reasons:

A. Both panelists were black, and [defense counsel] felt that they would exhibit leniency to [defendant] on the issue of punishment which was submitted to the jury.

B. [Defense counsel] felt that his *Batson* record would be compromised by [defendant's] peremptory removal of black panelist.

C. [Defense counsel] felt that both jurors would be sympathetic to [defendant] despite knowing Sgt. Adams.

D. Both jurors stated that although they knew Sgt. Adams, they would give weight to his testimony as they would any other witness.

\* \* \* \* \* \*

A. Paragraphs 1 through 5 and 7 through 9 allege that his trial counsel was ineffective for not moving to strike panelists Dean and Campbell peremptorily for cause. The Court finds that [defense counsel] struck [sic] panelists Dean

and Campbell as a matter of trial strategy for the reasons stated above in Findings of Fact. The Court will not second guess such a decision where there is no demonstration that [defendant's] trial counsel lacked the care and skill of a reasonably competent attorney.

Moreover any objection to the panelist for cause would have been properly overruled by the trial court, because the responses of both panelists demonstrated that they were impartial and fair despite being acquainted with Sgt. Adams. Trial counsel cannot be held to be ineffective for failure to make an objection where such objection was without merit. *Settle v. State*, [*State v. Settle*], 670 S.W.2d 7 (Mo.App.1984).

We have carefully reviewed the record and find the findings and conclusions of the court are not clearly erroneous. Rule 29.-15(j).

The judgment of conviction and denial of Rule 29.15 relief is affirmed.

SMITH, P.J., and AHRENS, J., concur.