STATE of Missouri, Plaintiff–Respondent,

v.

Johnathan COLE, a/k/a Johnifer Griffin, Defendant–Appellant.

Johnathan COLE, a/k/a Johnifer Griffin, Movant–Appellant,

v.

STATE of Missouri, Defendant–Respondent.

Nos. 58886, 60211.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 10, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 1992.

Application to Transfer Denied Jan. 26, 1993.

Deborah B. Wafer, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robin H. Grissom, Asst. Atty. Gen., Jefferson City, for respondent.

STEPHAN, Judge.

Johnathan Cole appeals from the judgment of the trial court sentencing him as a prior, persistent and Class X offender to ten years' imprisonment for illegal distribution of a controlled substance within 1,000 feet of a school in violation of Section 195.-214, RSMo Cum.Supp.1991, and to a consecutive five year term of imprisonment for illegal possession of a controlled substance in violation of Section 195.202, RSMo Cum. Supp.1991. A jury had found him guilty on both counts.[1] Cole also appeals from the judgment denying his Rule 29.15 motion after an evidentiary hearing. We have consolidated the two appeals pursuant to Rule 29.15($l$). We affirm both judgments.

Cole raises five points on appeal. He challenges the sufficiency of the evidence, a jury instruction, the State's comments in voir dire and closing argument concerning

---

1. Although defendant was charged, convicted and sentenced prior to 1991, there has been no change in the applicable statutes then in effect; thus, for ease of reference all citations are to RSMo Cum.Supp.1991, unless otherwise indicated.

reasonable doubt, the admission of certain evidence, and the adequacy of his trial counsel's pre-trial investigative efforts.

■■■ Defendant's first point states the evidence was insufficient to prove the element of his possession of a controlled substance. When reviewing a claim of insufficiency of the evidence, the role of this court is not to weigh the evidence but to ascertain whether sufficient evidence was adduced at trial so that a reasonable person could conclude that the defendant was guilty as charged. *State v. Wallace*, 825 S.W.2d 626, 630 (Mo.App.1992). In passing on the sufficiency of the evidence, we must accept as true all evidence and inferences that tend to support the verdict and disregard all adverse evidence and inferences to the contrary. *State v. Naucke*, 829 S.W.2d 445, 459 (Mo. banc 1992); *State v. Kalagian*, 833 S.W.2d 431, 435 (Mo.App.1992). We consider the evidence in a light most favorable to the State. *State v. Villa-Perez*, 835 S.W.2d 897 (Mo. banc 1992).

■■■ The evidence at , trial, when reviewed against this legal backdrop, established the following facts. On September 8, 1989, Detective William Sibert was assigned as an undercover officer to the Street Corner Apprehension Team ("SCAT"), a unit focusing on drug arrests within certain targeted neighborhoods in the City of St. Louis. While riding a bicycle, the undercover detective approached Johnathan Cole and a woman standing on a street corner in the City of St. Louis. Cole asked the detective if he "was looking." The detective understood this to be an offer to sell cocaine or "a rock." The detective answered that he "wanted a twenty", meaning rock cocaine worth $20.00. Cole directed the woman beside him to give the detective the merchandise. She gave him "the rock of cocaine" and the detective gave her a twenty dollar bill.

The undercover detective had been wired with a KEL transmitter to enable police officers in a surveillance van parked nearby to monitor and tape record his conversations. A television cameraman was also present in the surveillance van. The police officer supervising the SCAT operation was in a separate car accompanied by a television news reporter. As the undercover detective rode away, he notified the police officers in the surveillance van that the deal had been transacted.

The surveillance unit radioed Officers Whitling and Murphy who were waiting in an unmarked police car about one-half block away from the site of the drug sale. Officer Klier who, along with Officer Hylla, had also responded to the call, was in the process of arresting Cole as Officers Whitling and Murphy arrived at the scene. Several of the officers observed Cole drop from his right hand a plastic bag containing a white powdered substance. Later analysis determined the substance to be cocaine. The KMOV-TV cameraman in the police surveillance van videotaped the arrest. The videotape of the arrest which took less than thirty seconds was shown to the jury.

Defendant complains that the evidence was insufficient to prove the element of possession because the videotape "conclusively showed that Johnathan Cole did not possess any cocaine at the time of his arrest." Appellant states that the "videotape does not show a baggie in Johnathan's hand at any time and the videotape cannot lie."

We have reviewed the videotape several times. The videotape clearly depicts the drug sale to Detective Sibert on the bicycle. However, the police officers and their police car block much of the videocamera's recording of subsequent events. The view from the videocamera looks toward the *driver's* side of the police car; however, Cole was standing on the other side, behind the *passenger* side of the police car when arrested. The view of the participants is restricted to their upper bodies from about waist high. Officer Murphy freely admitted at trial that the videotape had a limited view and did not depict Cole dropping the plastic bag of cocaine. The jury was free to believe, based upon their own perception of the videotape coupled with Officer Murphy's testimony, that the videotape did not show Cole drop the bag because the police

car and the officers blocked the camera's view of the arrest.

■ Cole further contends that the testimony of the various State's witnesses was so inconsistent and contradictory as to be insubstantial and insufficient. Cole emphasizes differences in each police officer's account of Cole's dropping the bag of cocaine from his right hand. Cole concludes such differences render their eyewitness testimony unbelievable.

■ Each officer unequivocally testified that he saw Cole drop the bag of cocaine from his right hand. Any questions about the officers' credibility or minor inconsistencies in the testimony of the officers are questions for the jury and do not go to the submissibility of the State's case. *State v. Hudson,* 822 S.W.2d 477, 480 (Mo. App.1991). Conflicting and inconsistent statements made by witnesses reflect on their memory and the quality of the evidence, not its sufficiency. *Id.* The discrepancies about the exact location of Johnathan Cole's hands at the time he dropped the bag of cocaine was for the jury to resolve. The reliability and credibility of witnesses is for the jury to decide. *State v. Vinson,* 833 S.W.2d 399, 403 (Mo.App. 1992). We deny Cole's first point.

Defendant's second point focuses on instruction no. 6 to the jury. Instruction No. 6, based on MAI–CR3d 325.02, stated as follows:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on September 8, 1989, in the City of St. Louis, State of Missouri, the defendant possessed cocaine, a controlled substance, and

Second, that defendant was aware of its presence and illegal nature,

then you will find the defendant guilty under Count II of possessing a controlled substance.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term 'possessed' means either actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. *A person who is not in actual possession has constructive possession if he has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons. Possession may also be sole or joint. If one person alone has possession of a substance, possession is sole. If two or more persons share possession of a substance, possession is joint.*

If you do find the defendant guilty under Count II of possessing a controlled substance, you will return a verdict finding him guilty of possessing a controlled substance.

(Emphasis supplied.)

■ Defendant objects to the underlined portions of the instruction and claims that the trial court erred by including those portions in the instruction. At the outset, we note that the instruction's definition of "possession" as used in MAI–CR3d 325.02 and in this instruction is virtually identical to such definition in Section 195.010(33) RSMo Cum.Supp.1991. The sentence in the instruction that begins "[a] person who is not in actual possession has constructive possession if he has the power and intention ..." is drawn verbatim from the pattern instruction. This sentence does not deviate from the proper format of the approved instruction mandated by our Missouri Supreme Court. An appellate court has no authority to declare as erroneous a pattern instruction that has been adopted by the Missouri Supreme Court. *State v. Olds,* 831 S.W.2d 713, 721[16] (Mo.App. 1992); *State v. Turner–Bey,* 812 S.W.2d 799, 805 (Mo.App.1991). There was no error by including the above mandatory language in the instruction given.

■ The remainder of the given instruction beginning with "[p]ossession may also be sole or joint ... If two or more persons share possession of a substance, possession

is joint" is also included in the pattern instruction MAI–CR3d 325.02. However, it is shown as a parenthetical addition. The Notes on Use to MAI–CR3d 325.02 contain no guidance to explain under what circumstances the parenthetical phrase should be included when giving an instruction based on MAI–CR3d 325.02.

Defendant argues that use of this parenthetical phrase in the instruction permitted the jury to convict defendant under a theory of constructive possession based on evidence that his female accomplice possessed rock cocaine when they were arrested, rather than only on the evidence of his sole possession of the bag of powder cocaine. Defendant highlights both Count II of the indictment which charged that "defendant knowingly possessed or had under his control cocaine" and the State's opening statement that it was relying entirely on the "baggie" evidence to obtain a conviction against him on Count II for possession. Defendant concludes that the instruction should not have included the parenthetical phrase permitting his conviction under a theory of constructive possession because Count II of the indictment charging him with possession referred *only* to him. Thus, the inclusion of this parenthetical phrase within the instruction did not strictly conform to the charge in the indictment, thereby prejudicing him.

We disagree. The record reflects ample evidence that defendant was in actual possession of the cocaine in the "baggie" and in constructive or joint possession of the rock of cocaine that his female accomplice had. The prosecutor made it clear to the jury repeatedly in closing argument that defendant was in control and that the actions of his female accomplice were at his direction. The instruction clearly conformed to the evidence and did not deviate from the indictment. Point denied.

In his third point defendant states the trial court erred in sustaining the prosecutor's objections to questions asked by defendant's counsel during voir dire and in overruling his counsel's objections to the prosecutor's discussion of reasonable doubt during closing argument. Defendant ar-

gues the prosecutor's comments during voir dire and closing argument misstate the definition of reasonable doubt because, under the definition contained in MAI–CR3d 302.04, it is not restricted to the elements of the crime but goes to "guilt" and may arise from any source.

During the State's voir dire of the jury panel, the following occurred:

MS. DITRAGLIA [Defense Counsel]: Ms. Foster, I have the same question. If you heard the State's evidence in this case and you still had a reasonable doubt in your mind under the court's definition, would you be able to render a verdict of not guilty?

VENIREPERSON FOSTER: Yes.

MR. GRUMKE [Prosecutor]: Your Honor, I have to object. Reasonable doubt has to go to an element of a crime. It can't just be any reasonable doubt.

THE COURT: I'll sustain that.

MS. DITRAGLIA: I'll rephrase that, Ms. Foster. The reasonable doubt that goes to one of the elements that the State is required to prove in this case?

VENIREPERSON FOSTER: Yes.

In his closing statement, the prosecutor made the following argument to the jury:

MR. GRUMKE: ... All of the evidence that has come to you from that witness stand has told you that this man is guilty beyond a reasonable doubt, guilty of all of the elements that are set out that the judge has instructed you on, and those are the elements that you must find beyond a reasonable doubt.

You may have a reasonable doubt as to when Detective Murphy arrived on the scene and when he saw the defendant throw those drugs down. You may have a reasonable doubt as to what time of day it actually occurred, but that doesn't matter. Your reasonable doubt, if you have—

MS. DITRAGLIA: Your Honor, I object. This is an improper statement of the law. The jury is to be guided by the instructions—

THE COURT: The jury will be bound by the instructions of law as given by the court.

MR. GRUMKE: The reasonable doubt must go to the element of the charges before you.

MS. DITRAGLIA: I object. There's no instruction that states that and I ask it be stricken from the record.

MR. GRUMKE: The instruction specifically states that.

THE COURT: It will be overruled.

MR. GRUMKE: That's what your reasonable doubt must go to, one of the elements of the two charges against the defendant. And there is no reasonable doubt as to those charges and those elements in those charges.

Defendant contends that the prosecutor's comments in voir dire and closing argument requiring only that it prove the elements of the offense beyond a reasonable doubt created the danger that the jury could discount its doubts arising from inconsistencies in the State's evidence, such as the discrepancies in the police officers' testimony. Appellant states that *State v. Massey*, 817 S.W.2d 624 (Mo.App.1991) controls this case. We disagree.

In *Massey*, the prosecutor not only incorrectly defined reasonable doubt, but also dwelled upon his misstatements during his voir dire. Here, the gist of the prosecutor's comments in voir dire and closing argument was merely that reasonable doubt had to go to an element of a crime. In *State v. Brown*, 822 S.W.2d 529, 530 (Mo.App.1992), a prosecutor stated during voir dire that "you can have doubts about everything under the sun so long as it isn't the elements of the crime, okay. If those elements are proven to you beyond a reasonable doubt, then under the law you got to find the defendant guilty, okay." Elsewhere, the prosecutor said, "Ultimately when it comes down to it, only the elements have to be proven to you beyond a reasonable doubt, okay." *Id.* We observed in *Brown* that it is clearly error for the prosecution to define "beyond a reasonable doubt" but that it is not error for the prosecution to discuss the concept of "beyond a reasonable doubt" without attempting to define it for the jury. *Id.* We held that the prosecutor's comments in *Brown*

were not error because such statements constituted a discussion of the burden of proof rather than a definition of "beyond a reasonable doubt." *Id.* We believe the holding in *Brown* applies with equal force here. We wholeheartedly embrace *Massey's* precautionary note to prosecutors to refrain from defining "beyond a reasonable doubt." We urge prosecutors to stay strictly within the confines of MAI–CR3d 302.04 which defines "beyond a reasonable doubt" for the jury. The prosecutor here did not transgress those bounds. Point denied.

Defendant's fourth point states certain testimony was inadmissible hearsay. During the State's case-in-chief, the prosecutor questioned Detective Sibert, the undercover officer who had been wired with a KEL transmitter. The prosecutor asked the detective to explain the absence of a tape recording of the drug transaction. Defense counsel objected to Detective Sibert speculating about why no tape existed. The court ruled that the detective could answer based on what he knew directly, but not on what he had heard. The prosecutor then questioned the detective, "What do you know about the tape in this case?" The detective answered, "That it was erased from the news media's equipment." The prosecutor continued, "So, there is no tape—" The detective replied, "No."

At no time did defense counsel interpose an objection at trial based on hearsay, although counsel did raise this ground as an assignment of error in the motion for new trial. Defendant may not on appeal seek to reverse the ruling of the trial court on the admission of evidence upon grounds entirely different from his trial court objection. *State v. Forister*, 823 S.W.2d 504, 511 (Mo.App.1992). Thus, the issue has not been properly preserved for our review.

Issues which are not properly preserved for appellate review may only be reviewed for plain error. *State v. Tarkington*, 794 S.W.2d 297, 299 (Mo.App.1990). Plain errors affecting substantial rights may be considered in our discretion when manifest injustice or miscarriage of justice

has resulted therefrom. Rules 29.12(b); 30.20. The burden of proving that an error of the trial court resulted in manifest injustice is allocated to defendant on appeal. Defendant has not met this burden. During defense counsel's cross-examination of Detective Sibert, counsel established that Sibert did not actually witness whether the transmission from his KEL microphone had been tape recorded by the officers in the surveillance van. Thus, the jury was clearly aware of the hearsay nature of Detective Sibert's testimony that he lacked first-hand knowledge about the KEL tape.

Although the detective's testimony was hearsay, defense counsel utilized this very same testimony during closing argument. Counsel emphasized that the KEL tape was not available and stated, "They don't have a tape because [defendant] didn't communicate with this man [Detective Sibert] and they want to keep it that way. And the only thing they're going to have is his word." Thus, defense counsel used the absence of the tape to undermine the credibility of Detective Sibert by suggesting the tape had been erased because its contents would have contradicted the detective's testimony that defendant had solicited the officer to buy drugs. In light of defendant's use of this testimony for his own benefit, we find no manifest injustice or miscarriage of justice. Point denied.

Defendant's final point on appeal attacks the denial of his Rule 29.15 motion after an evidentiary hearing. He specifically alleged in his Rule 29.15 motion that his trial counsel was ineffective for failing to investigate, interview or subpoena Andre Chatman, the KMOV–TV cameraman in the surveillance van, to appear at trial as a defense witness to testify that his equipment did not cause the KEL tape to malfunction. Defendant claims that Chatman's testimony would have impeached Detective Sibert, the undercover officer who had been wired with a KEL transmitter. Detective Sibert, as mentioned earlier, had testified that Chatman's camera equipment had interfered with the audiotape transmitter causing it to malfunction, so the audiotape was unavailable. Defendant also claims the State violated his discovery request by not disclosing the identity of the television news cameraman.

■■■■ Our review of defendant's claim is limited to a determination of whether the motion court's findings, conclusions, and judgment are "clearly erroneous." Rule 29.15(j); *State v. Vinson*, 833 S.W.2d 399, 407 (Mo.App.1992). The findings and conclusions are "clearly erroneous" only if a review of the entire record leaves this court with a definite and firm belief that a mistake has been made. *Vinson*, 833 S.W.2d at 407. To prevail on his assertion of ineffective assistance of counsel, defendant must show that counsel's performance did not meet reasonable professional standards and that this ineffectiveness affected the outcome of the trial. *Id.* Further, the motion court should make every effort to eliminate the distortion wrought by hindsight and to evaluate the challenged conduct from counsel's perspective. *Id.* Trial counsel is presumed to have rendered adequate assistance and to have exercised reasonable professional judgment in making all significant decisions. *Id.*

■■■ At the evidentiary hearing, defendant's trial counsel Ms. Ditraglia testified, as did her investigator Kathy Foster, Officer Rodney Brunson and, at a later hearing, Andre Chatman. The motion court summarized their testimony in the following findings of fact:

10. Ms. Ditraglia testified that she received discovery from the State including a videotape of the crime made by a Channel 4 News cameraman. Ms. Ditraglia testified that she was told prior to trial that the State did not know the identity of the cameraman. Ms. Ditraglia testified that she talked to the reporter who did the news story and an executive of Channel 4 News and neither would divulge the identity of the cameraman. Ms. Ditraglia also testified that there were specific trial strategies based on information only known to Ms. Ditraglia which made her decide she did not want the cameraman to testify.

11. Det. Brunson testified that he, Det. Gertrude Bogan, and an unknown cameraman were located in the surveillance vehicle at the scene of movant's crime.

12. Ms. Foster testified that she made extensive efforts to discover the identify of the Channel 4 News cameraman but was unsuccessful.

13. At an additional hearing held on April 9, 1991, movant was finally able to secure the presence of KMOV news cameraman Andre Chatman. Mr. Chatman testified that he saw two people engage in a transaction with an undercover police detective. Mr. Chatman stated that his camera equipment should not have interfered with any tape recording; however, he did not know if an audiotape of the transaction was actually obtained by the police.

Based on its findings of fact the motion court concluded as follows:

... Ms. Ditraglia testified that there was no failure by the State to comply with discovery ... Movant presented no evidence that the State failed to comply with the rules of discovery.

\* \* \* \* \* \*

... Ms. Ditraglia testified at movant's Rule 29.15 hearing about her extensive efforts to contact this cameraman. Ms. Ditraglia also testified that there were trial strategies which she employed at movant's trial which could have been destroyed had the cameraman testified, thus affecting her decision of whether or not to use this witness. The testimony of Andre Chatman at the hearing could only have been used to impeach the direct testimony of evidence presented by the State that Mr. Chatman's camera equipment interfered with an audiotape recording.

At the hearing Ms. Ditraglia testified that she had received full discovery from the State, knew about the television videotape and knew the prosecutor did not have the cameraman's name. The record refutes defendant's claim that the motion court was clearly erroneous in finding the State had complied with defense counsel's discovery request. Likewise, we find no merit in defendant's claim that his trial counsel was ineffective for not calling the cameraman as a defense witness.

■■■■ If a potential witness's testimony would not unqualifiedly support the defendant, the failure to call such a witness does not constitute ineffective assistance of counsel. *Leisure v. State*, 828 S.W.2d 872, 875 (Mo. banc 1992). As the motion court found, trial counsel is not ineffective for failing to call witnesses to impeach credibility. *Vinson*, 833 S.W.2d at 409. While Chatman's testimony might have impeached Detective Sibert's testimony, it certainly would not have provided a viable defense for defendant. *Accord, Vinson*, 833 S.W.2d at 408. In fact, his testimony at the evidentiary hearing that he saw the drug transaction take place as he videotaped the events with his television camera could have bolstered the officers' accounts of defendant's culpability in the drug transaction.

At the evidentiary hearing, defendant's trial counsel testified that her trial theory in challenging the State's evidence relied on the premise that defendant and his female accomplice were not standing as close together as the videotape made it appear. She feared that the cameraman could have testified the video camera did not distort the scene photographed. Thus, even without having interviewed him, defense counsel had a legitimate concern his testimony could be damaging to her defense strategy.

■■■■ The selection of witnesses and introduction of evidence are questions of trial strategy. *Leisure*, 828 S.W.2d at 876. The decision not to call a witness as a matter of trial strategy is virtually unchallengeable. *Id.* at 875; *Vinson*, 833 S.W.2d at 409. Thus, even if counsel had secured this witness, his testimony was, more than probably, a double-edged sword. The motion court's determination that defense counsel made extensive efforts to contact this cameraman; that her inability to locate him could be further excused by the likelihood she would have elected, as trial strategy, not to call him to the witness stand; and

that his testimony would not have assisted defendant was not clearly erroneous. Point denied.

The judgments of the trial court and motion court are affirmed.

PUDLOWSKI, P.J., and CRIST, J., concur.