STATE of Missouri, Respondent,

v.

Christopher SANDY, Appellant.

No. 64453.

Missouri Court of Appeals,
Eastern District,
Division One.

June 21, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 4, 1994.

Application to Transfer Denied
Sept. 20, 1994.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Defendant appeals his jury conviction for second degree murder. We affirm.

Defendant was found guilty of second degree murder and sentenced to life imprisonment. At the hearing on his motion for a new trial, Defendant waived his right to appeal his conviction in exchange for the State's agreement not to indict him for first degree robbery and armed criminal action charges arising out of the same incident. Later, Defendant filed a Rule 29.15 motion alleging his counsel was ineffective for informing him the State would reindict him for first degree murder if he did not waive his right to appeal. This motion was denied. *See, Sandy v. State,* 783 S.W.2d 137, 138 (Mo.App.1989).

After exhausting his state remedies, Defendant filed a petition for a writ of habeas corpus in the United States District Court, Eastern District of Missouri, alleging the waiver of his right to appeal was invalid. The federal court granted the writ and remanded to the trial court to allow Defendant to refile a motion for a new trial. This motion was denied and Defendant was resentenced to life imprisonment on July 26, 1993. This appeal now follows.

Only a brief recitation of the facts is necessary, as Defendant does not challenge the sufficiency of the evidence to convict him. In February of 1985, Defendant, Sherry Chettle, and Jerry Roth devised a plan to rob Dohack's restaurant. Defendant and Roth had previously worked as busboys at Dohack's and knew the manager took the nightly deposit to the bank after closing and another employee, usually Ron Heynal, followed the manager. Defendant went to his father's house and took a .22 caliber rifle from his father's closet. On February 27, 1985, Defendant put the gun and a Halloween mask in his car and went to pick up Chettle. They drove to a parking lot about 6/10's of a mile from Dohack's and parked the car. They walked to the back of the restaurant and hid in the bushes to wait for Leora Adams, the manager on duty, to come out with the night's receipts. Defendant attempted to shoot out two lights behind the restaurant but was only able to hit one of them. Adams and Heynal came out of the restaurant together and walked toward their separate cars. When Adams got close to her car, Chettle grabbed her, spun her around, and put a knife to her throat. Adams began screaming and Defendant shot her in the head. Adams fell to the ground, and Defendant grabbed the bank bag she had dropped. He and Chettle got in Adam's car and drove away.

The police were unable to link Defendant to the Adam's shooting until the fall of 1985. After questioning several people who attended Defendant's high school, police were led to Janet Morgan, a close friend of Chettle. After speaking with Morgan, police obtained sufficient information to issue a warrant for Defendant's arrest. The arrest warrant was telefaxed to Cape Girardeau, where Defendant was attending school. When St. Louis County Police arrived in Cape Girardeau, the Cape Girardeau police had arrested Defendant and taken him into custody. After being read his rights, Defendant signed a waiver form and admitted on tape that he shot Adams while robbing Dohack's restaurant.

At trial, Defendant testified on his own behalf and admitted to shooting Adams but contended he fired the gun accidentally after Adams started screaming. The jury found Defendant guilty of second degree murder under the felony-murder instruction and sentenced him to life imprisonment.

In Point I, Defendant alleges the trial court erred in overruling his motion for a mistrial after the prosecutor made the following comments during the rebuttal portion of his argument:

First of all, the thing about the defendant's age. The State considered the defendant's age, and the State considered that when we waived the death penalty.

Defense counsel immediately objected to these remarks, and the court sustained the objection and instructed the jury to disregard the statement. Nevertheless, defense counsel made a motion for a mistrial and the court denied this motion. Defendant now argues the court should have granted the mistrial because the prosecutor's statement implied he had a personal belief Defendant was guilty and "also altered the jury's sense of responsibility for their verdict and the sentence they were to assess by their verdict."

Granting a mistrial is a drastic remedy, and should be used only where there is grievous error that cannot be otherwise remedied. *State v. Vineyard*, 839 S.W.2d 686, 691[17] (Mo.App.1992). Here, the trial court sustained defense counsel's objection and instructed the jury to disregard the remarks. The Missouri Supreme has held a jury admonition generally cures the prejudice created by an improper prosecutorial comment. *State v. Wren*, 643 S.W.2d 800, 802[1] (Mo.1983). The trial court did not err in finding its instruction to the jury to disregard the prosecutor's statement remedied any prejudice which may have resulted.

Defendant further alleges the prosecutor's comment that the Defendant's age was considered in the State's decision to waive the death penalty implied the prosecutor personally believed Defendant was guilty. While it is true the prosecutor is prohibited from making comments on a defendant's guilt which imply knowledge of facts not in evidence, here, the prosecutor's comment, albeit improper, did not imply Defendant was guilty of anything. *See, State v. Clifford*, 815 S.W.2d 3, 8[6] (Mo.App.1991).

Defendant also alleges a mistrial was necessary because the prosecutor's comments about why the State waived the death penalty improperly implied to the jury that they were not ultimately responsible for determining Defendant's sentence, in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In *Caldwell*, the United States Supreme court held a prosecutor's comment that the jury's decision as to life or death was not final and would be immediately appealed improperly minimized the jury's sense of responsibility for determining the appropriateness of the death penalty. However, in *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), the Court held *Caldwell* was inapplicable to a prosecutor's comment to the jury that a death sentence was the only way to prevent a similar future act. The Court stated *Caldwell* was factually distinguishable from *Darden* because the trial court in *Caldwell* approved of the prosecutor's remarks, while the trial court in *Darden* granted defense counsel's objection and instructed the jury to base their decision on the evidence alone. 477 U.S. at 183–84 n. 15, 106 S.Ct. at 2473 n. 15. Here, the trial court also sustained defense counsel's objection and immediately instructed the jury to disregard the prosecutor's comment. In *Darden*, the Court further clarified its holding in *Caldwell* by stating: "*Caldwell* is relevant only to certain types of comment—those that mislead the jury as to its role on the sentencing process in a way that allows the jury to feel less responsible than it should for the sentencing decision." *Id.* Here, the jury was asked to sentence Defendant either to life imprisonment or to a term of imprisonment anywhere from 10–30 years. The issue of whether Defendant should receive the death penalty was never presented to the jury. Therefore, it did not have the effect of minimizing the jury's role in sentencing. We find the factors which were lacking in *Darden* are also lacking in this case. *But see, State v. Stutts*, 723 S.W.2d 594, 596 (Mo.App.1987) (where the court reversed because it found both factors which were lacking in *Darden* to be present, i.e., the court approved of the prosecutor's comment that the trial court had the power to reduce the sentence imposed by the jury and this comment directly minimized the jury's role). Point denied.

▊ In his second point, Defendant contends the trial court plainly erred by failing to declare a mistrial *sua sponte* after the prosecutor referred to Defendant as a "seventeen year-old murderer" during redirect examination of one of the police officers. At trial, the following exchange took place:

Q: Larry, when you went down to Cape Girardeau what was Christopher arrested for?

A: Murder first.

Q: So you were dealing with a seventeen year old murderer, is that correct?

A: That's correct.

MR. O'BRIEN: Objection, Your Honor. That's why they are here.

THE COURT: Sustained.

▊ Because Defendant failed to make a motion for a mistrial following the prosecutor's comment, this claim can only be reviewed for plain error. *See, State v. Cole,* 844 S.W.2d 493, 495[12] (Mo.App.1992). Under the plain error standard, Defendant bears the burden of showing manifest injustice or a miscarriage of justice will result if the alleged error is left uncorrected. *State v. Kalagian,* 833 S.W.2d 431, 434[4] (Mo.App. 1992). Further, it is well established that the granting of a mistrial is a drastic remedy which is to be exercised only in extraordinary circumstances. *State v. Lumpkin,* 850 S.W.2d 388, 393[5] (Mo.App.1993). The trial court is in a better position to judge the prejudicial effect of any error; therefore, the declaration of a mistrial rests in its discretion. *State v. Vineyard,* 839 S.W.2d 686, 692[17] (Mo.App.1992). We find the trial court did not abuse its discretion in failing to grant a mistrial *sua sponte* following the prosecutor's comments. Point denied.

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.