STATE of Missouri, Respondent,

v.

Darthell E. DAVIS, Appellant.

No. WD 49308.

Missouri Court of Appeals,
Western District.

March 14, 1995.

John P. O'Connor, Susan M. Hunt, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and BERREY, JJ.

FENNER, Chief Judge.

Appellant, Darthell Davis ("Davis"), appeals his convictions of murder in the second degree and armed criminal action after trial by jury.

Considered in the light most favorable to the verdict, the record reflects that on the evening of May 14, 1993, a party attended by up to 300 teenagers took place at the home of Jimmy Pryor in Peculiar, Missouri. Though the party was ostensibly a graduation party for Raymore–Peculiar high school students, many of the teens at the party attended other schools.

Geoff and Greg Dill, twin brothers who lived near the Pryors, contacted a number of their friends in Grandview to inform them of the party, including a number of African–American youths. Appellant, an African–American, ended up attending the party with the group that Geoff and Greg Dill had contacted. One of the African–Americans brought a pistol to the party which pistol ended up in appellant's possession. During the party, a fight broke out between two females. A crowd gathered as people moved in to break up the altercation.

As the crowd gathered, Lewis Dunsworth and Dewayne Townsend arrived at the party. Townsend was walking through the crowd when an African–American youth swung his arm and struck Townsend in the chest. Townsend said "excuse me," and, although the incident appeared accidental, the African–American youth responded by turning to Townsend and saying "What the fuck you looking at?" Townsend responded by stating "Do you have something to say to me?" A heated argument ensued. A shot was then fired into the air. The shooter then called Townsend a "mother fucker" and shot him in the face at a distance of only a few inches.

There was conflicting evidence presented as to the identity of the shooter. Several witnesses testified that appellant was the shooter, and the jury found that appellant fired the shot that killed Dewayne Townsend.

Appellant raises three points of alleged trial error on appeal. However, since we find appellant's first point dispositive, it is not necessary to address his other two points. In his first point, appellant argues that the trial court erred in rejecting his *Batson* challenge to the State's peremptory strikes of the only two prospective African–American jurors, thereby violating the Equal Protection Clause of the United States Constitution.

## I. *BATSON* CHALLENGES

Appellant claims that the trial court erred in overruling his *Batson* challenge to the State's peremptory strikes of vernirepersons Wallace Singleton and Ernest Carpenter. A review of the record reveals that Singleton and Carpenter were two of the three African–Americans on the jury venire. The third was struck for cause by the State. As a result of the State's peremptory strikes of these individuals, the appellant, an African–American male, was tried and convicted by an all white jury.

### A. Missouri Law Implementing *Batson*

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that a defendant in a state criminal trial could establish a prima facie case of racial discrimination violative of the Fourteenth Amendment, based on the prosecution's use of peremptory challenges to strike members of the defendant's race from the jury venire. *Griffith v. Kentucky,* 479 U.S. 314, 316, 107 S.Ct. 708, 709–10, 93 L.Ed.2d 649 (1987). A defendant may rely on the fact ... that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723 (citing *Avery v. Georgia,* 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953)); *State v. Antwine,* 743 S.W.2d 51, 63–64 (Mo. banc 1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988). In applying the *Batson* holding in Missouri, the Supreme Court announced in *State v. Parker,* 836 S.W.2d 930, 940 (Mo. banc 1992), *cert. denied,* — U.S. —, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992), that a finding of prima facie discrimination by the trial court is not required for the defendant to support his claim of discrimination. In-

stead, the court adopted a procedure believed superior to that suggested by *Batson*.[1]

In Missouri courts, once the defendant raises a *Batson* challenge with regard to one or more specific venirepersons struck by the State and identifies the cognizable racial group to which the venireperson or persons belong, the State is required to offer an explanation for the strike. *Parker*, 836 S.W.2d at 939. The explanation must be neutral, related to the case to be tried, clear and reasonably specific, and legitimate. *State v. Rios*, 840 S.W.2d 284, 286 (Mo.App. 1992). Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866–67, 114 L.Ed.2d 395 (1991); *State v. Parker*, 836 S.W.2d 930, 934 (Mo. banc 1992). Even if the prosecutor's explanation results in the disproportionate removal of minority venirepersons, disparate impact alone will not convert a facially race-neutral explanation into a *per se* violation of equal protection. *Hernandez*, 500 U.S. at 362, 111 S.Ct. at 1867–68; *Parker*, 836 S.W.2d at 934.

There are some limits, however, on what may be considered a "neutral explanation" for the challenged state action of striking a particular venireperson. Though the prosecution is allowed to rely on hunches and past experience in making peremptory strikes as long as race discrimination is not the motive, his or her individual discretion is not unfettered. *Batson* is not satisfied by "neutral explanations" that are no more than facially legitimate, reasonably specific, and clear. *Antwine*, 743 S.W.2d at 65. If merely facially neutral explanations were sufficient to satisfy *Batson*, it would take little effort for prosecutors who are of such a mind to adopt rote "neutral explanations" which bear

facial legitimacy but conceal a discriminatory motive. *Id.* If such "explanations" were allowed, the purpose of *Batson* would be thwarted, rendering the Supreme Court's pronouncement and continued expansion of the *Batson* doctrine a charade. *Id.*

Assuming that the prosecutor is able to articulate a neutral reason for the strike that is more than facially legitimate, the defendant then must show that the state's explanation for the strike is merely pretextual and that the strikes were racially motivated. *Parker*, 836 S.W.2d at 939; *Antwine*, 743 S.W.2d at 64. In determining whether the defendant has carried this burden of proof, the trial court must consider a variety of factors. *Parker*, 836 S.W.2d at 939. Foremost among these factors is the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case. *Id.* Facts or circumstances that detract or lend credence to the prosecutor's proffered explanations are relevant. *Id.* at 939–40. Objective justifications for exercising peremptory strikes are more persuasive than the use of hunches or horse sense by the prosecutor. *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992).

The *Parker* court also listed several additional factors that should be considered in determining whether the State's justifications are merely pretext, including the existence of similarly situated white jurors who were not struck by the prosecution,[2] the degree of logical relevance between the proffered explanation and the case to be tried in terms of the kind of crime charged, the nature of the evidence to be adduced, and the potential punishment if the defendant is convicted,[3] the prosecutor's demeanor or statements during voir dire,[4] the demeanor of the

1. The fact that the Missouri procedure differs from that suggested in the *Batson* case does not establish an impermissible conflict. The United States Supreme Court has emphasized that it has not formulated particular rules for the implementation of *Batson* and its progeny and does not intend to do so. *Batson*, 476 U.S. at 99 n. 24, 106 S.Ct. at 1725 n. 24; *Powers v. Ohio*, 499 U.S. 400, 416, 111 S.Ct. 1364, 1373–74, 113 L.Ed.2d 411 (1991); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 631, 111 S.Ct. 2077,

2088–89, 114 L.Ed.2d 660 (1991); *Parker*, 836 S.W.2d at 938.

2. See *Kempker*, 824 S.W.2d at 910–11.

3. *Antwine*, 743 S.W.2d at 65.

4. *State v. Jones*, 747 S.W.2d 229, 231 (Mo.App. 1988).

excluded venirepersons,[5] the court's past experiences with the prosecutor,[6] and other objective factors bearing on the state's motive to discriminate on the basis of race, such as the conditions prevailing in the community and the race of the defendant, the victim, and the material witnesses.[7] *Parker*, 836 S.W.2d at 940. The state's failure to use all of its strikes against venirepersons of a racial minority, or the presence of a racial minority on the defendant's jury, are, at most, relevant factors *only* to the extent that they indicate that race was not the prosecutor's motive for the challenged strikes. *Id.*

Once each side has made their respective arguments, *Batson* requires a trial judge to assess the entire milieu of the voir dire objectively and subjectively, focusing all of the information and intuitive perceptions gathered to determine whether the prosecutor exercised peremptory challenges in a discriminatory manner. *Antwine*, 743 S.W.2d at 65. Because of the extensive role of the trial court and the fact that the findings of fact will turn largely on an evaluation of credibility, a reviewing court must give great deference to those findings. *Id.* at 66. Findings of fact shall not be set aside unless clearly erroneous. *Id.* A finding is clearly erroneous when, though there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed based on an evaluation of the entire evidence. *Id.* (*citing Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

Before addressing the merits of the case at bar, this court must also address the State's argument that we may not consider certain facts or arguments related to the *Batson* challenge because the defense did not argue the specific facts directly to the trial court during the *Batson* hearings. The State seeks to prevent the court from considering that venireperson Wallace Singleton had served with the Air Force Security Police

during his military service. Additionally, the State wishes for this court to disregard appellant's contention that the prosecutor mischaracterized venireperson Ernest Carpenter's statements regarding having been a victim of gang violence. Finally, the State wishes for this court to disregard appellant's argument questioning the "retired military" justification set forth by the State as being a race-neutral explanation for exercising peremptory strikes against Carpenter and Singleton. In support of this argument, the State cites *State v. Gray*, 887 S.W.2d 369, 385 (Mo. banc 1994), and *State v. Boyce*, 887 S.W.2d 447, 451 (Mo.App.1994).

The State's position is not an accurate statement of the law in this state. In *Boyce*, the defendant made no attempt to present any affirmative evidence that the prosecutor's explanations for the challenged peremptory strikes were pretextual. Because there was no evidence to challenge the State's explanations, the court assumed the defense must have been satisfied with the explanations, and therefore, there was no basis for a *Batson* appeal. *Boyce*, 887 S.W.2d at 451. Where no evidence is presented in support of a defendant's contention that the state's explanation for a peremptory strike is pretext, Missouri assumes no *Batson* challenge is made, and the issue is not preserved for appeal. *See State v. Aziz*, 861 S.W.2d 803, 806 (Mo.App.1993); *State v. Plummer*, 860 S.W.2d 340, 346 (Mo.App. 1993); *State v. Kelly*, 851 S.W.2d 693, 697 (Mo.App.1993); *State v. Davis*, 835 S.W.2d 525, 527 (Mo.App.1992); *State v. Hudson*, 822 S.W.2d 477, 481 (Mo.App.1991); *State v. Jackson*, 809 S.W.2d 77, 81 (Mo.App.1991). This is not the situation presented by the case at bar, as appellant clearly offered arguments that the State's justifications were pretext.

In *Gray*, the *State* challenged the *defense's* peremptory strike of a white juror pursuant

---

5. *Antwine*, 743 S.W.2d at 65.

6. *State v. Hunter*, 802 S.W.2d 201, 203 (Mo.App. 1991). It is not sufficient to argue, however, that affirmance must follow because the trial judge apparently considered the prosecutor credible. *Kempker*, 824 S.W.2d at 911.

7. *State v. Burgess*, 800 S.W.2d 743, 747 (Mo. banc 1990); *State v. Williams*, 784 S.W.2d 309, 313 (Mo.App.1990).

to *Batson* and *Georgia v. McCullum*, —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). Once the State made its objection, the defense was required to set forth a legitimate, race-neutral explanation for the strike of the venireperson in question. The Supreme Court of Missouri held that the trial court did not err in not allowing the strike as the evidence the defense presented to justify its proposed strike on appeal was not presented to the trial court. *Gray,* 887 S.W.2d at 384–85. In fact, there is no indication in the *Gray* opinion that the defense attempted to articulate any race-neutral basis for the strike to the trial court. Instead, the defense contended that the *McCullum* holding did not apply to the situation where a black defendant attempts to peremptorily strike a white venireperson, therefore the strike was valid. *Id.* at 384. Like *Boyce* and the cases cited in support of that holding, the court in *Gray* was presented with a total absence of evidence to support the appealing party's position at the trial court. The *Gray* case is clearly distinguishable on its facts from the case at bar.

As the facts hereafter discussed reveal, appellant clearly challenged the prosecution's peremptory strikes and provided some affirmative evidence that the "neutral explanations" given for the strikes were pretextual. The trial judge was then required to assess the total circumstances of the voir dire objectively and subjectively in making his findings. *Antwine,* 743 S.W.2d at 64. In addition to the statements of counsel at the *Batson* hearing, the total circumstances of the voir dire necessarily include the information the State contends is improper for consideration on appeal. The trial court must consider this information in rendering its findings, and so must this court in determining whether the trial court's actions were clearly erroneous. Consequently, the State's position is without merit and the challenged factual information regarding the jurors who were struck by the State will be considered.

## B. Facts Surrounding the *Batson* Challenges

The record reveals that 62 venirepersons were called for service on the jury venire.

Though the record is somewhat unclear, it appears that there were three prospective African–American jurors. One, John Murrell, was stricken for cause by the State. Of the remaining panel eligible for selection, there remained two African–Americans, Wallace Singleton and Ernest Carpenter. The State utilized two of its six peremptory strikes to remove Singleton and Carpenter from the jury panel.

Voir dire questioning elicited that Singleton was retired from the Air Force, having served as a security policeman. He had also served on a hung jury with four other members of the venire in November 1993. Venireperson Carpenter was a retired military medic and informed counsel that he had a car stereo stolen by a "Pioneer gang" in Germany that went around stealing Pioneer stereo equipment.

Upon the State's striking of Singleton and Carpenter, appellant timely objected and made the showing necessary under *Parker* to require the State to provide race-neutral explanations for the strikes. In response, the State provided the following explanation for striking Singleton:

> As to [Singleton], there were two factors that the state felt were pertinent to the *Batson* challenge and which would allow the state's strikes to be sustained. First, [Singleton] was struck for the reason that he previously served on a Johnson County hung jury.... Secondly, that [Singleton] indicated he was retired military.

With regard to Carpenter, the State provided the following explanation for utilizing a peremptory strike:

> As to [Carpenter], again the state struck [Carpenter] for one response in that he, too, was retired military. The second reason that he was the victim of gang violence in Germany, and we feel that would be relevant to this case in as much as there is at least an implication from the facts of this case and the evidence, as we believe it might come in, that might involve some reference to groups or at least individuals that might be classified as gangs engaging in potential violent behavior.

Appellant then challenged the State's reasons, affirmatively stating that if the State

were concerned about "gangs and those type of things, they had the right to either question [Carpenter] individually in the courtroom or outside the hearing of the jury." Appellant also pointed out that venireperson Buttram was not struck by the State, but served on the same hung jury as Singleton. Additionally, appellant reminded the court that several members of the venire had prior military service, and that Singleton had not indicated in any response that he could not be a fair and impartial juror.

The State then responded to appellant's challenges, essentially restating the justifications for the peremptory strikes that it previously enunciated. With regard to the prior military service of Singleton, the State announced that this was "a factor that the State feels is pertinent to whether or not he should serve on this jury," and did not further explain its concern with retired military personnel. As to other members of the prior hung jury that were not struck by the State, the justification was given that venirepersons Buttram and McClain were questioned individually about their prior jury experience. After they were questioned, the parties agreed that it was not necessary to talk with each prior jury member. Based on their responses to the individual questioning, however, Buttram and McClain were not struck by the State.

Appellant responded to the State by further questioning the State's process of striking some, but not all, of the jurors who served on the prior hung jury and by pointing out that venireperson Bailey had served in the military and guarded prisoners, but was left on the jury. The State responded by again enunciating its initial explanations for striking Singleton and Carpenter, stating they believed their reasons were ample justification for the strikes.

In response, appellant added that venireperson Guthrie remained on the jury, though he was retired Air Force Military Police and the State insisted it did not want retired military on the jury.

At this point, the trial court thought it had heard enough, and the following discourse occurred:

THE COURT: That's enough. You guys are talking to the wrong person.

[APPELLANT COUNSEL]: Here we go—

THE COURT: Leave it to the Court of Appeals. You have made your record. You have made your mess, if you have made a mess. You have taken out of your six strikes all of the black jurors. There are only two. They are gone. You have made your record, you have made your mess. They are gone.

[STATE]: Thank you.

THE COURT: [Venireperson] Guthrie has nothing to do with that. Mr. Guthrie was also, as you have stated, on the Security Police. That's a good reason to leave him on if they want a police officer on the jury.

[APPELLANT COUNSEL]: Judge, you're going to allow these strikes and say these are race neutral reasons, they have given proper race neutral reasons?

THE COURT: That's—their record has been made and I am going to allow them to make those strikes.

Why the trial court interjected an opinion on behalf of the State that there was good cause for leaving Guthrie on the jury is not reflected in the record. Nonetheless, the exchange between the court and counsel continued, with the court allowing the strikes of Singleton and Carpenter. Two additional discussions between the court and counsel occurred on the same day with appellant counsel renewing his *Batson* objections, and the court overruling the objections on each occasion.

Two days after voir dire and the *Batson* hearings, on Thursday, February 3, 1993, the court summoned counsel to chambers for an additional *Batson* proceeding. Apparently, the court had been provided an advance sheet of the Eastern District's opinion in *State v. Jackson,* 865 S.W.2d 678 (Mo.App. 1993), requiring the trial court to consider the justifications given in determination of whether the prosecutor exercised his strikes in a discriminatory manner where the defendant made a timely objection and make a record thereof. At this time, the court recited for the record that the reasons given by

the prosecutor for exercising his peremptory strikes were considered, they were found to be race-neutral, and appellant's *Batson* objections were overruled.

As stated earlier, the findings of the trial court will be set aside only if the reviewing court is left with the definite and firm conviction that a mistake has been committed based on an evaluation of the entire evidence. *Antwine*, 743 S.W.2d at 65. This court is possessed of such a conviction upon review of the entire evidence in the record.

First, we address the State's explanation that Singleton and Carpenter were "retired military" and that retired military people were not wanted on the jury. While this explanation is facially neutral, it must also be more than facially legitimate. *Antwine*, 743 S.W.2d at 65. The State was given several opportunities to explain its reasoning for not wanting retired military personnel on the jury, but never expanded on their position that it was a "pertinent factor." This is the exact situation with which the court was concerned in *Antwine*. The prosecutor has provided no information illustrating the legitimacy of the "retired military" justification for his peremptory strikes and provided no explanation as to how this characteristic relates to the case at bar. Accepting the State's justifications for its peremptory strikes without any rationale by way of explanation or otherwise supported by the record showing the facts and circumstances surrounding the case would amount to a "rubber stamp" of approval, rendering the *Batson* holding and principles a charade.

Given the above analysis, it is questionable whether the appellant was required to come forth with evidence that the "retired military" justification was mere pretext, as this explanation by the State does not rebut the initial presumption of discrimination under the facts and circumstances of the case at bar. We do not address this issue, however, as the appellant did provide such evidence to the trial court.

The "retired military" issue aside, the State provided additional justifications for striking both Carpenter and Singleton.

With regard to Carpenter, the State also explained that he had been the victim of gang violence in Germany. During voir dire, Carpenter stated that "there was a gang—Pioneer gangs going around, I guess, stealing Pioneer equipment out of cars" and that he had his car stereo stolen. The State attempted to explain this justification by implying that there may be evidence that the crime in question was gang related. Though there may be some relevance between the stereo theft and the case at bar, it is minimal given that Carpenter suffered a crime against property while the case at bar involves a shooting. Additionally, what Carpenter meant by use of the term "gang" is unclear, but the State did not choose to pursue the issue further. Finally, though the African–American youths, including appellant, went to the party as a group, there was no evidence that the shooting was "gang" related activity.

In addition to questioning the relationship between the crime Carpenter was a victim of and the events in question, appellant responded to the State's explanations for striking Carpenter by pointing out that Guthrie and Bailey were similarly situated white jurors who had military experience and remained on the jury panel. Though not completely similarly situated, the fact that Guthrie and Bailey remained on the jury is relevant. Additionally, it is noted that Bailey had been the victim of a robbery in which no one was apprehended and venirepersons Brown, Buttram, Kesher, and Hammond had also been robbed or burglarized but were not struck by the State.

With regard to Singleton, the State explained that in addition to the fact he was retired military, he was struck for his service on a prior hung jury. Yet, other members of the prior hung jury were not struck by the State. The State responded that they did not have enough strikes to take all members of the prior hung jury off the panel. Given this explanation, the rationale for striking Singleton must be questioned as his experience in the military was as a military policeman, experience the State itself said it desired with regard to venireperson Guthrie. Again, though no other juror is completely

similarly situated, all of these factors are relevant in considering the entire "milieu" of voir dire in examining the peremptory strikes of the State as part of a *Batson* challenge.

Also relevant to the analysis of whether appellant carried his burden of proof in establishing purposeful discrimination with regard to the strikes of both Carpenter and Singleton are the "objective factors" bearing on the State's motive to discriminate on the basis of race in this case. Appellant is a young African–American male accused of killing a young white male at a party in a rural, predominantly white community. The crime itself was the subject of extensive pretrial publicity, eventually resulting in a change of venue from Cass County to Johnson County, Missouri. The community where the victim resided was in an uproar. The situation was severe enough that the two brothers believed to have invited the African–American youths to the party, Geoff and Greg Dill, testified that they received death threats and, as a result, eventually relocated to St. Louis for a period of time. Further, the majority of the State's witnesses were white, aside from the other African–American youths who testified pursuant to an immunity agreement with the State. Based on these factors, there would be an objective motive for the State to discriminate in jury selection.

Additionally, though the State's failure to use all of its strikes against venirepersons of a racial minority, or the presence of a racial minority on a defendant's jury, are relevant factors to the extent that they indicate that race was not the prosecutor's motive for the challenged strikes, the State's use of strikes in the case at bar removed all African–Americans from the jury. This case presents the exact situation *Batson* was designed to protect against.

Finally, the actions of the trial court in sustaining the State's peremptory strikes of Carpenter and Singleton are of concern. When initially presented with the arguments surrounding the *Batson* challenge, the trial judge's statements indicate an attempt to avoid the issue, leaving it to this court to decide, rather than a finding that the State's justifications were satisfactory and that appellant had not established that the justifications for the State's strikes were mere pretext for discrimination. It is the role of the trial judge to fully consider the arguments of counsel and the total circumstances of voir dire in ruling on a *Batson* challenge. Though the court did ultimately state on the record that such consideration had been given two days after the initial hearings, the court's actions at the time the *Batson* objections were initially overruled is relevant to our review.

Based on an evaluation of the evidence in the record, the trial court's action at the time of the initial *Batson* hearings, and an examination of the plausibility of the justifications given by the State for the peremptory strikes of Carpenter and Singleton under the totality of facts and circumstances surrounding the case, this court is left with the definite and firm conviction that a mistake was committed in overruling appellant's *Batson* challenge to the State's peremptory strike of venireperson Carpenter. The State did not provide sufficient information to establish that the "retired military" justification for striking Carpenter was race-neutral and legitimate. With regard to the justification that Carpenter had been the victim of "gang" violence, the appellant provided sufficient evidence, based on the totality of circumstances, that the justification was merely pretextual. Though we strongly question the use of a peremptory strike with regard to venireperson Singleton as well, our convictions do not rise to the level necessary to overturn the trial judge's *Batson* ruling as it pertains to him.

The failure of the trial court to sustain appellant's objection to the State's peremptory strike of venireperson Carpenter was clearly erroneous. This cause is reversed and remanded for new trial.

All concur.