**STATE of Missouri, Respondent,**

v.

**Kenneth Edward MACK, Appellant.**

**No. WD 49736.**

Missouri Court of Appeals,
Western District.

July 25, 1995.

Richard D. Jacoby, Kansas City, for appellant.

Catherine S. Dorothy, Asst. Pros. Atty., Jackson County, Kansas City, for respondent.

Before FENNER, C.J., P.J., and BRECKENRIDGE and SMART, JJ.

FENNER, Chief Judge.

Kenneth Edward Mack appeals from his conviction of driving while intoxicated and driving while his license was revoked pursuant to sections 577.010 and 302.321, RSMo 1993,[1] respectively, after trial by jury. Appellant alleges the following points of error: (1) the state failed to establish venue and jurisdiction, therefore appellant's motion for judgment of acquittal at the close of the state's evidence should have been granted; (2) appellant's driving record was improperly admitted into evidence; (3) appellant's motion for mistrial should have been granted after allegedly improper references to appellant's efforts to invoke his Fifth Amendment right to remain silent were made on the witness stand by Officer Sauer; (4) appellant's *Batson* challenges to the strikes of two venirepersons should have been sustained; and (5) evidence of the results of appellant's breathalyzer test was improperly admitted into evidence.

Viewed in the light most favorable to the verdict, the facts indicate that Officer Anthony Mak of the Kansas City Missouri Police Department stopped appellant at 60th and Prospect for running a red light at 59th and Prospect. After pulling appellant over, Officer Mak noticed that appellant smelled of alcohol and that his eyes were watery and bloodshot. After administering the "one-leg stand" and "walk and turn" field sobriety tests, Officer Mak arrested appellant for driving under a suspended license and for driving under the influence of alcohol.

Officer Mak then took appellant to a mobile D.U.I. checkpoint operating at Independence Avenue and Monroe in Kansas City, Missouri. Appellant was turned over to Officer Alfred Sauer who was operating an Intoxilyzer–5000 breathalyzer within a Winnebago that was part of the checkpoint. Offi-

cer Rodney Phillips was also present in the Winnebago and in charge of the checkpoint. Officer Phillips performed the maintenance check on the Intoxilyzer–5000 and then Officer Sauer administered the breathalyzer test and prepared an accompanying report of the test results. The breathalyzer test indicated that appellant had a blood alcohol content of .201 percent, more than twice the level of legal intoxication in the state of Missouri. Officer Sauer also advised appellant of his *Miranda* rights while appellant was at the checkpoint to undergo the breathalyzer test.

The case was submitted to the jury, which convicted appellant of driving while under the influence of alcohol and driving while his license was revoked. Appellant was ultimately sentenced to 43 days in jail and a fine of $500.00 on the first count and 48 hours in jail on the second count to run consecutively with the first. This appeal ensued.

## I.  *VENUE*

Appellant contends the trial court committed error in not granting his motion for judgment of acquittal at the close of the state's evidence because the state failed to establish proper venue and jurisdiction. Appellant claims the state never elicited testimony establishing the city, county, or state in which the alleged violations occurred. This argument is without merit.

 First, while venue must be proved, it is not an integral part of the offense and thus need not be proved beyond a reasonable doubt; it may be inferred from all the evidence. *State v. Lingar*, 726 S.W.2d 728, 732 (Mo. banc), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987); *State v. Harper*, 778 S.W.2d 836, 838 (Mo.App.1989). The standard by which venue must be established is whether it could reasonably be inferred by the facts and circumstances that the charged crime occurred within the trial court's jurisdiction. *Lingar*, 726 S.W.2d at 732. The facts and circumstances of this case clearly allow the inference that venue was proper in Jackson County, Missouri.

1. All references to Missouri statutes are to the Missouri Revised Statutes, 1993 Supplement, un-

less otherwise indicated.

■ Further, even if the evidence is inadequate to allow venue to be inferred, venue is a personal prerogative which is waived by proceeding to trial without objection. *State v. Wood,* 596 S.W.2d 394, 401 (Mo. banc), *cert. denied,* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980); *Harper,* 778 S.W.2d at 838. An objection to venue made for the first time at the close of all the evidence is not timely. *Harper,* 778 S.W.2d at 838; *State v. Vincent,* 582 S.W.2d 723, 725 (Mo. App.1979). Similarly, a motion made at the close of the state's case comes too late. *Harper,* 778 S.W.2d at 838. Appellant made no objection or challenge to the venue of his trial until the sentencing hearing. If appellant was truly concerned about whether venue was proper, there was ample opportunity to raise such issue prior to trial. The brief and record are void of any reference at all by appellant to the issue of improper venue and contain no explanation or excuse for failure to raise the issue at an earlier occasion. Point denied.

## II. *REFERENCE TO APPELLANT'S RIGHT TO REMAIN SILENT*

■ Appellant contends that the following trial discourse between the prosecutor and state's witness Officer Sauer constituted an impermissible reference to appellant's Fifth Amendment right to remain silent:

Q [prosecutor]: What about his speech?

A [Officer Sauer]: His speech was slurred?

Q: Did you ever have any difficulty understanding him?

A: No. He was pretty much—he was very articulated [sic] with his words. He pronounced his words very slowly and very clearly, but the speech was slurred in through his pronunciation of the words.

Q: And did you attempt to ask him any questions?

A: Yes, I did?

Q: And what did he say?

A: After I advised him of his right to remain silent under the *Miranda* warning, the party refused to answer any questions.

[Appellant counsel]: Your Honor, I'm going to object. I move for mistrial.

■ The fact that an accused exercised the constitutional right to remain silent and refused to respond to post-arrest interrogation may not be admitted into evidence against him. *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *State v. Smart,* 756 S.W.2d 578 (Mo. App.1988). "It may not be shown that an accused failed to volunteer an exculpatory statement, nor may it be shown that, by his silence, he failed to deny or explain, while under arrest, an incriminating fact about which no question was asked." *State v. Howell,* 838 S.W.2d 158, 161 (Mo.App.1992) (citing *State v. Stuart,* 456 S.W.2d 19, 22 (Mo. banc 1970)). These principles are mandated where the record reveals that a defendant "stood mute" or claimed his privilege to remain silent *in the face of accusation.* *Howell,* 838 S.W.2d at 161; *State v. Starks,* 459 S.W.2d 249, 252 (Mo.1970). These principles do not apply, however, where a defendant did not stand mute in the face of an accusation because no accusation was made. *Id.*

In *Howell,* the prosecutor questioned a police officer at trial, and asked if the defendant made any statement after he was advised of his *Miranda* rights. "No, sir," was all the officer said. The prosecutor made no other reference to the defendant's post-arrest silence. Under those circumstances, the court concluded that no inference of guilt could reasonably have been drawn from the prosecutor's question and the officer's response. *Howell,* 838 S.W.2d at 163.

The facts and circumstances of the case at bar, like those in *Howell,* do not mandate application of the principles protecting against admission of a defendant's post-arrest interrogation silence. Officer Sauer's statements indicate that appellant was not being questioned directly about the crime of driving under the influence of alcohol. Nor is this a case where the appellant "clammed up" in the face of a charge of guilt made under circumstances calling for an admission or denial. All that the record indicates is that Officer Sauer stated that the defendant fell silent after the *Miranda* warning was issued. No further inference to appellant's

post-arrest silence was made by the prosecutor. No reasonable inference of the appellant's guilt could arise from the challenged discourse between the prosecutor and Officer Sauer regarding appellant's refusal to answer questions after he was Mirandized. Point denied.

## III. *BATSON CHALLENGES*

■ Appellant claims the trial court erred in allowing the state to peremptorily strike two venirepersons over his *Batson* objections. Appellant, an African–American, claims the two venire members were struck because of their African–American race.

■ In Missouri courts, once a defendant raises a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identifies the cognizable racial group to which the venireperson or persons belong, the state is required to offer an explanation for the strike. *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc), *cert. denied,* — U.S. ——, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). The explanation must be race-neutral, related to the case to be tried, clear and reasonably specific, and legitimate. *State v. Rios,* 840 S.W.2d 284, 286 (Mo.App.1992).

Our recent decision in *State v. Davis,* 894 S.W.2d 703 (Mo.App.1995), attempted to clarify what was meant by the term "legitimate" as it applied to the prosecutor's race-neutral explanation for a peremptory strike. We reasoned that a prosecutor's race-neutral justification must be more than merely facially legitimate; otherwise, it would take little effort for a prosecutor of such a mind to adopt rote "neutral explanations" which bear facial legitimacy but conceal a discriminatory motive. *Id.* at 706.

A subsequent decision of the United States Supreme Court in *Purkett v. Elem,* — U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam), provides further instruction on the timing of the inquiry into the "legitimacy" of a prosecutor's justification for a peremptory strike. The Supreme Court provided the following three-step process for *Batson* analysis:

Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.

*Id.* at ——, 115 S.Ct. at 1770–71. In *Davis,* we required a determination of the legitimacy of a justification for a strike as part of what the Supreme Court labeled as step 2. The Supreme Court disagrees with this approach, stating that the "second step of the process does not demand an explanation [of a justification] that is persuasive, or even plausible." *Id.* The issue at the second step is the "facial validity of the prosecutor's explanation." *Id.* The justification satisfies the second step of the process if it is race-neutral. *Id.*

■ This is not to say, however, that the court is not to consider the "legitimacy" of a proposed race-neutral justification for a peremptory strike. It is as part of the third step that the persuasiveness of the justification becomes relevant. *Id.* at ——, 115 S.Ct. at 1771. As part of the third stage, implausible or fantastic justifications may be found to be pretexts for purposeful discrimination. *Id.* We believe that a complete analysis under *Batson* and its progeny necessarily requires an inquiry into the "legitimacy" of a proposed justification as part of the third stage of the analysis.

This position is in accord with existing Missouri case law. Once a prosecutor articulates a neutral reason for the strike under step two, the defendant must show that the state's explanation for the strike is merely pretext and that the strikes were racially motivated. *Parker,* 836 S.W.2d at 939; *State v. Antwine,* 743 S.W.2d 51, 64 (Mo. banc 1987). Foremost among these factors is the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case. *Parker,* 836 S.W.2d at 939. A factor in the plausibility of the prosecutor's explanations is the "legitimacy" of the justification.

■ If a defendant fails to present evidence in support of a contention that the state's explanation for a peremptory strike is pretext, instead relying on general or conclusory allegations about the state's reasoning, Missouri assumes no *Batson* challenge is made, and the issue is not preserved for appeal. *See State v. Aziz,* 861 S.W.2d 803, 806 (Mo.App.1993); *State v. Plummer,* 860 S.W.2d 340, 346 (Mo.App.1993); *State v. Kelly,* 851 S.W.2d 693, 697 (Mo.App.1993); *State v. Davis,* 835 S.W.2d 525, 527 (Mo.App.1992); *State v. Hudson,* 822 S.W.2d 477, 481 (Mo. App.1991); *State v. Jackson,* 809 S.W.2d 77, 81 (Mo.App.1991).

■ Once each side argues their position, the trial judge is left to assess the entire voir dire in determining whether a prosecutor has exercised a peremptory challenge in a discriminatory manner. *Antwine,* 743 S.W.2d at 65. Because of the extensive role of the trial court and because the findings of fact turn largely on an evaluation of credibility, a reviewing court must give great deference to those findings. *Id.* at 66. Findings of fact shall not be set aside unless clearly erroneous. *Id.* A finding is clearly erroneous when, though there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed based on an evaluation of the entire evidence. *Id.* (*citing Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

Appellant first challenged the peremptory strike of venireperson Tommy Robinson. The state responded by explaining that Robinson was struck because statements indicating he had a negative experience with a police officer when falsely accused of speeding, that he was unsatisfied with the work of the police department when he was a burglary victim, and that a relative was incarcerated. The court also noted that Robinson did appear upset when questioned about his satisfaction with the police department's work when he was a crime victim.

On its face, the state's justification is race-neutral and satisfies step two of the *Elem* analysis. Therefore, appellant was required to show that the justification was merely pretext. Appellant's response to the state's

justification was that Robinson "always responded that he could be fair" and that there were several other people who were unsatisfied with the police or had relatives who were incarcerated that were not struck. Appellant never indicated a specific, similarly situated Caucasian venireperson who was not struck. The court also noted that Robinson appeared more agitated than the other venirepersons when discussing his dissatisfaction with the police. Based on these facts, it is apparent that appellant failed to establish that the state's justification for the peremptory strike of Robinson was mere pretext.

Appellant next challenged the peremptory strike of venireperson Mary Ross–Harper. The state justified this strike by explaining that Ross–Harper had two negative experiences with the police, her son had a negative experience with the police, she had a friend who was incarcerated, and that she stated she may know appellant's son. The state's justification was race-neutral and satisfies the requirements of step two of *Elem.*

Appellant responded with no more than the general statement that the state was striking all of the African–American venirepersons and that other venirepersons who were not struck had negative experiences with the police or friends in jail. We question whether appellant's response rises to the level sufficient to preserve the *Batson* challenge for appeal as discussed earlier. Even if appellant has preserved the challenge for appeal, he has not established that the state's justification for peremptorily striking Ross–Harper is mere pretext.

After reviewing the record, we are not left with the definite a firm conviction that the trial court erred in allowing the state to peremptorily strike Robinson or Ross–Harper. Point denied.

## IV. *ADMISSION OF THE BREATHALYZER TEST RESULTS*

■ Appellant contends that the results of the Intoxilyzer 5000 Breathalyzer test were improperly admitted into evidence because the state's evidence was insufficient to show that no radio transmission occurred while the test was being administered.

In order to establish a prima facie foundation to admit evidence of a breathalyzer test, it must be demonstrated that the testing methods set out in section 577.020 were followed in that the test was performed (1) according to the techniques and methods approved by the division of health, (2) by persons possessing a valid permit, and (3) using equipment and devices approved by the division. *Shine v. Director of Revenue*, 807 S.W.2d 160, 162 (Mo.App.1991). There is no dispute that requirements (2) and (3) were satisfied.

Appellant's contentions under this point are based on an alleged failure to adhere to proper test methods that are part of requirement (1). When utilizing the Intoxilyzer 5000, the Missouri Department of Health prescribes a six step operational checklist and a four item certification that the administrator of the test signs. 19 C.S.R. 20–30.060. The fourth item on the certification states that "[n]o radio transmission occurred inside the room where and when this was being conducted." *Id.* at Form # 5.

Officer Sauer signed the certification regarding the absence of radio transmissions inside the room during the test. In making this certification, Officer Sauer stated that he depended upon the fact that the radio frequency interference detector on the breathalyzer machine did not indicate any interference. Officer Sauer also testified that he was aware that a cellular phone was in use in the front of the Winnebago where the test was administered and that other cellular phones were present in the back of the bus. Appellant contends that because , Officer Sauer testified that at least one cellular phone was in use during the test, the procedures mandated by 19 C.S.R. 20–30.060 were not followed; therefore, the test results should not have been admitted into evidence.

There was clear evidence of appellant's state of intoxication presented to the court in the form of Officer Mak's testimony regarding appellant's appearance and failure of two field sobriety tests when he was initially pulled over. The purpose of the law being enforced is to remove dangerous drunk drivers from Missouri roadways. *Collins v. Director of Revenue*, 691 S.W.2d 246,

252 (Mo. banc 1985). The requirement of adhering to the division of health standards is to provide a substitute for the common law foundation for introduction in evidence of the amount of alcohol in an individual's system. *Tomkins v. McNeil*, 782 S.W.2d 400, 402 (Mo.App.1989); *State v. Crowell*, 560 S.W.2d 889, 891 (Mo.App.1978). The testing process is a procedural requirement to insure accurate results. *Tomkins*, 782 S.W.2d at 402. Here, there is evidence in the form of testimony from Officer Sauer that the radio frequency interference detector never indicated there was any interference with appellant's test; this indicates the accuracy of the test was not compromised by the use of cellular phones while the test was being administered.

When, as in this case, there is clear evidence that the accuracy of the results was not compromised by the cellular phone transmissions, it would go against the purpose of the law to void a license suspension for failure of the state to comply with a procedural requirement designed to ensure such accuracy. *See Id.; Eckhoff v. Director of Revenue*, 745 S.W.2d 815, 816–17 (Mo.App.1988). While we do not encourage future non-compliance with the department of health regulations by the state, we do not believe the trial court erred in admitting appellant's breathalyzer test results into evidence. Point denied.

## V. ADMISSION OF APPELLANT'S DRIVING RECORD

Appellant's final contention is that the trial court erred in admitting appellant's driving record into evidence over his timely hearsay objection.

Several Missouri statutes have removed some of the steps required in order to admit public documents into evidence. Section 302.312 is one such statute, providing that *copies* of certified public documents are admissible as evidence in the same manner as the originals. This statute has been interpreted to create an exception to the Best Evidence Rule only; the copies are still subject to the same foundation objections as the originals: authentication and hearsay. *Had-*

lock v. Director of Revenue, 860 S.W.2d 335, 338 (Mo. banc 1993). Appellant made a timely hearsay objection to the admission of his driving record at trial.

The state claims appellant's driving record is admissible under the business records exception to the hearsay rule. Section 490.692.1 allows business records to be admitted into evidence, subject to other substantive or procedural objections, upon the affidavit of a person who would otherwise provide the prerequisite foundation testimony for their admission. Section 490.692.2 provides the following additional requirement for admission of the records into evidence:

> No party shall be permitted to offer such business records into evidence pursuant to this section unless all other parties to the action have been served with copies of such records and such affidavit at least seven days prior to the day upon which trial of the cause commences.

The state did not provide copies of the affidavit in question to appellant until the day of the trial. Consequently, appellant claims the trial court erred in admitting the evidence.

The state argues that 490.692.2 is merely a notice requirement and that the purpose of the statute would not be furthered in requiring strict adherence to it in this case, as appellant knew the state had to use his driving record to prove the charge of driving while his license was revoked as soon as the charge was filed and that further notice of the use of the record was given when the state responded to appellant's discovery request. The state fails to consider that, though appellant might have known of the state's intent to use the record, the state still retained the option of calling the records custodian as a witness rather than using 490.692.2 to introduce the driving record. The state's argument that 490.692.2 is merely a notice requirement is unpersuasive.

Further, the principles of statutory construction do not allow this court to simply ignore the provisions of section 490.692.2. Each word, clause, sentence, and section of a statute should be given meaning. Hadlock, 860 S.W.2d at 337. Adopting the state's position would require this court to completely ignore the requirements of section 490.692.2, which we cannot do. The state must provide copies of the records to be introduced along with a copy of the affidavit required by section 490.692.1 to a defendant at least seven days before trial in order to introduce business records via section 490.692. The state did not comply with section 490.692 in the case at bar. Consequently, the trial court erred in admitting the appellant's driving record into evidence.

The fact that the trial court erroneously allowed appellant's driving record into evidence mandates reversal of his conviction on the charge of driving with a revoked license.

Based on the above and foregoing analysis, the judgment of the trial court after trial by jury finding appellant guilty of driving while intoxicated is affirmed and the judgment finding appellant guilty of driving while his license was revoked is reversed. Appellant is ordered discharged from the charge of driving while his license was revoked. Costs are assessed one-half against appellant and one-half against respondent.

All concur.