**STATE of Missouri, Respondent,**

v.

**Donald E. ANDERS, Appellant.**

**No. WD 54327.**

Missouri Court of Appeals,
Western District.

June 23, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court July 28, 1998.

Seth Shumaker, Kirksville, for Appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for Respondent.

HANNA, Presiding Judge.

Following a jury-waived trial, the defendant, Donald E. Anders, was found guilty of bribery of a public servant, § 576.010,[1] and driving while intoxicated, § 577.010.0, in the circuit court of Schuyler County. On May 2, 1996, the court sentenced the defendant, as an intoxication-related persistent offender, § 577.023.1(2), to concurrent five-year sentences. The defendant claims that the trial court erred in admitting his driving record and the results of his breathalyzer test, and that the state failed to make an opening statement and failed to prove the defendant's prior alcohol-related convictions.

Viewed in the light most favorable to the verdict, the facts indicate that, on September 10, 1996, John Gottman, a Schuyler County sheriff's deputy, was patrolling in Downing, when he observed a maroon pickup truck headed east on Highway 136, traveling well in excess of the 35 m.p.h. speed limit and driving recklessly. Gottman recognized the pickup as one that the defendant usually drove. He observed the truck swerve off the road and hit some mailboxes. As the truck turned corners, its wheels were spinning gravel and, at one point crossed the center line while rounding a corner. After driving through several side streets, the truck was proceeding on Route A when it made a U-turn onto Highway 136, and headed west. Gottman activated his patrol lights and followed the truck back into Downing. The driver pulled into a grocery store parking lot and stopped. Gottman asked the defendant for his driving license, and then directed him to the back seat of his patrol car.

When Gottman called his dispatcher to check the defendant's license number, the dispatcher could not hear him because the

---

1. All statutory references are to the Missouri Revised Statutes, 1994, unless otherwise indicated.

defendant was yelling in the background. Gottman indicated that the defendant was being "loud and obnoxious." He made several threats, including that he would "have [Gottman's] badge." Gottman requested assistance, and the Schuyler County game warden, Kevin Patterson, responded. The defendant was also verbally abusive to Patterson.

The presence of a crowd in front of the grocery store made the defendant "more obnoxious." The defendant yelled profanities, staggered, "smelled like alcohol" and his speech was slurred. The defendant's son arrived and scuffled with his father, resulting in their both falling to the pavement. A friend of the defendant stepped in and physically restrained the defendant.

At this point, another sheriff's deputy, Charles Tallman, arrived at the scene. The defendant became "verbally disagreeable" with Tallman who, in response, handcuffed him. Tallman placed the defendant in the front seat of his patrol car. The defendant continued to berate Tallman. The defendant's wife then arrived and placed a tape recorder inside the patrol car to record the defendant's statements. The defendant continued with several additional threats and obscene comments.

Tallman detected a "very strong" odor of intoxicants on the defendant, and noted that the defendant required help walking, was talking in a loud voice and his speech was very slurred. Subsequently, Missouri State Highway Patrolman, Corey Craig, arrived. He also smelled the odor of alcohol on the defendant's breath. Craig asked the defendant whether he had been drinking, but he did not reply.

Craig asked the defendant to perform a series of field sobriety tests. He first administered the "gaze nystagmus" test which the defendant was unable to pass. The defendant was then asked to recite the alphabet from A to Z. The defendant recited some of the first letters of the alphabet, but then "exchanged and confused the letters very badly." After his initial attempt, the defen-

dant could remember only "10 more letters of the alphabet."

Next, the defendant was asked to count backwards from 97 to 84. The defendant asked if he could start at 100 and count backwards or if he could start at one and count forward. After being told no, the defendant cursed and told Craig, "I'm not doing that." Craig asked the defendant to perform a "walk and turn" test and a "one leg stand" test to assess his balance and stability. The defendant refused to perform these tests. Craig noted, however, that the defendant had difficulty standing, and attempted to lean against a pole to help keep his balance.

Based on their observances, Deputies Gottman and Tallman concluded that the defendant was intoxicated. Based on the defendant's appearance and the results of the field sobriety tests, Trooper Craig also formed the opinion that the defendant was intoxicated. Craig placed the defendant under arrest for driving while intoxicated.

Craig searched the defendant's truck and found several empty beer bottles and an empty bottle of schnapps. In the meantime, the defendant was kicking the interior of Craig's patrol car, and was informed by the officer that if anything inside was damaged, he would be charged with the destruction of state property. The threat did not dissuade the defendant, as he continued kicking the windshield. In response, Craig obtained a pair of leg cuffs and the defendant's ankles were shackled. The defendant managed, however, to continue to kick the car's windshield.

After Craig finished searching the truck, he returned to his car and read the defendant his *Miranda* rights.[2] Because the defendant was uncooperative, Craig recorded their conversation with a cassette recorder. The tape recording demonstrated that the defendant continued to make threats, including physical threats directed at the officers, and the use of profane language.

The defendant was transported to the Schuyler County courthouse. He was belligerent when answering questions. The defendant was read his rights with regard to the

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.     1602, 16 L.Ed.2d 694 (1966).

implied consent law, and he agreed to take a breathalyzer test. Craig testified that the defendant refused to provide a complete breath sample because he would prematurely stop blowing into the breathalyzer. The override function had to be used in order to analyze the incomplete breath sample. The incomplete sample the defendant provided indicated that his blood-alcohol content was .18 percent. As Craig was administering the breathalyzer test, the defendant kept asking him if he wanted money. He got his billfold out a couple of times and pulled out his checkbook two or three times. The defendant asked Craig, "Do you want a couple, three or four hundred, do you want a check, do you want cash, do you want paid now?" The defendant also asked how much it was going to cost him to keep his driving license, and offered Craig various amounts of money ranging from $300 to $600.

█ In his first point, the defendant claims that the trial court erred in admitting his driving record, because the state failed to serve the defendant with copies of the record at least seven days prior to trial.[3] The defendant does not dispute that the exhibit admitted was a record of the department of revenue or that it was properly certified.

The defendant points to § 302.312 of the Missouri statutes which, he argues, governs the admissibility of state driving records. The 1994 statute read as follows:

> Copies of all papers and documents lawfully deposited or filed in the offices of the department of revenue ... properly certified by the appropriate custodian or the director, shall be admissible as evidence in all courts of this state *in the same manner and with like effect as the originals.*

§ 302.312 (emphasis added). The case law interpreting the statute, and the italicized language, held that when attempting to admit such records, the records were subject to the same foundational requirements as the originals. *See Hadlock v. Director of Revenue*, 860 S.W.2d 335, 337–38 (Mo. banc 1993); *State v. Mack*, 903 S.W.2d 623, 630–31 (Mo. App.1995). As such, the records offered pursuant to § 302.312 could not be admitted into evidence, unless the other party "has been served with copies of such records and such affidavit at least seven days prior to ... trial." § 490.692.2; *Mack*, 903 S.W.2d at 630–31.

However, § 302.312 was amended in 1996. The new statute, which was in effect at the time of the defendant's trial, does not contain the requirement that the records be admissible "in the same manner ... as the originals." Section 302.312.1, RSMo Supp 1997, states:

> Copies of all papers, documents, and records lawfully deposited or filed in the offices of the department of revenue ... and copies of any records, properly certified by the appropriate custodian or the director, shall be admissible as evidence in all courts of this state and in all administrative hearings.

The deletion from the prior statute's language that—the evidence is admissible "in the same manner and with like effect as the originals"—must be given meaning. When enacting changes to statutes, the legislature is presumed to be aware of the state of the law at the time of the enactment. *In re the Matter of Nocita*, 914 S.W.2d 358, 359 (Mo. banc 1996). The legislature acts with a purpose, and we presume that it intended to change the law. *Kilbane v. Director of Dept. of Revenue*, 544 S.W.2d 9, 11 (Mo. banc 1976).

The amended statute eliminates the necessity to additionally qualify such records. *Mills v. Director of Revenue*, 964 S.W.2d 873 (Mo.App.1998). The revenue department's records in this matter were relevant and were properly certified. Hence, the records were admissible without the requirement that they be served "at least seven days prior to ... trial." Point denied.

█ The defendant next argues that the trial court erred in admitting the results of his breathalyzer test because the state did not prove that the breathalyzer machine had

---

**3.** The state correctly points out that the record is devoid of any proof that the defendant was not served copies of the records.

been tested within the past 35 days, as required by 19 CSR 20–30.031(3). *State v. Ammon,* 826 S.W.2d 103, 103 (Mo.App.1992) (ruling that "[t]his showing [is] foundational, and in the absence thereof, the results of the ... test [are] not admissible"). Trooper Craig testified, however, that the breathalyzer machine was tested every month and that those tests were performed, according to Missouri Highway patrol rules, "before the tenth of each month."

■ Regardless of whether Craig's testimony was sufficient to render the breathalyzer test results admissible pursuant to 19 CSR 20–30.031(3), we find that the defendant's alleged error does not warrant reversal. In a judge-tried case, we presume that the trial judge was not prejudiced by inadmissible evidence and was not influenced by it in reaching a judgment, *State v. Shurn,* 866 S.W.2d 447, 462 (Mo. banc 1993), unless it is clear from the record that the trial judge considered and relied upon the inadmissible evidence. *State v. Sladek,* 835 S.W.2d 308, 313 (Mo. banc 1992).

The trial judge apparently had reservations about the admissibility of the breathalyzer results. As a result, when determining whether the defendant was under the influence of alcohol, the court summarized the testimony regarding the defendant's actions and the opinions of the three officers as to Anders' intoxication. The court stated that:

> Irrespective of any breathalyzer tests, even if none had been given, the Court finds that the State has met its burden of proving the defendant was under the influence of alcohol while he was operating his motor vehicle, ... and accordingly finds the defendant guilty of that offense.

It is apparent that the trial judge did not rely upon the breathalyzer results in determining that the defendant was under the influence of alcohol. The court instead relied upon the substantial evidence of the defendant's behavior, inability to stand and walk, erratic driving, slurred speech and the smell of intoxicants. In *State v. Wiggins,* the court ruled that the trial judge erred in admitting the breathalyzer results, but found that the admission was nonprejudicial in that the defendant's intoxication was established by oth-

er evidence. 841 S.W.2d 752, 753 (Mo.App. 1992). The trial judge in this matter relied on the substantial evidence of the defendant's intoxication without the breathalyzer results. Point denied.

■ The defendant's third point addresses the state's failure to make an opening statement, contending, correctly, that Rules 27.02 and 27.03, and § 546.070 require the state to make an opening statement, even in judge-tried cases. *See State ex rel. Westfall v. Gerhard,* 676 S.W.2d 37, 38 (Mo.App.1984). The state argues that such error does not require reversal unless the defendant objects to the failure to make an opening statement in a timely fashion, and the state's failure to make an opening statement results in prejudice to the defendant.

The prosecutor had presented three witnesses when she realized that she had failed to make an opening statement. The prosecutor had not yet called Trooper Craig, the arresting officer who administered the field sobriety tests and breathalyzer test. After the prosecutor realized her mistake, she called it to the attention of the court. At this point, the defendant's counsel made a motion to dismiss the charges. The trial judge denied the motion because he found that "there is no evidence that the failure of the prosecutor to make an opening statement prejudiced the defendant being able to prepare his defense in this case."

In *State v. Hood,* the court indicated that the defendant might have waived any error by failing to object to the lack of an opening statement "at the time the prosecuting attorney began presenting State's evidence." 680 S.W.2d 420, 423 (Mo.App.1984). The *Hood* court based its decision, however, on the fact that the defense had not been prejudiced by the lack of an opening statement. *Id.* The defense had been supplied with copies of police reports, and knew what the state's witnesses were going to say. *Id.* The result was that the defendant did not demonstrate that the state's failure to make an opening statement prejudiced the defense. *Id.* The same result was reached in *State v. Wimberly,* where the court ruled that since the defendant did not claim surprise with regard to

the state's sole witness, the arresting police officer, the result was that "no prejudice was demonstrated." 700 S.W.2d 167, 168 (Mo. App.1985).

Moreover, both *State v. Little,* 572 S.W.2d 871 (Mo.App.1978) and *State v. Williams,* 575 S.W.2d 863 (Mo.App.1978) stand for the proposition that a defendant must show prejudice when the state fails to make an opening statement. The court, in *State v. Little,* ruled that Rule 26.02 requires that the state make an opening statement in bench-tried cases, because of its purpose of informing the defendant of the "contemplated course of the prosecution in order that the defendant can meet the charges against him." 572 S.W.2d at 874. The *Little* court went on to determine that there was no prejudice because there was a plea proceeding in which the prosecutor made a statement as to the evidence the state expected to adduce if the case went to trial. *Id.* Thus, the court ruled that:

> [T]he defendant had been apprised of the facts to be relied upon by the state for conviction. No confusion or surprise resulted from the failure of the prosecutor to make an opening statement, and the defendant was apprised of the facts so that he could fairly meet the accusation made against him.

*Id.* Also, in *State v. Williams,* the court ruled that the defendant did not suffer manifest injustice, under plain error review, since the defendant did not suggest how the lack of an opening statement prejudiced the defense offered. 575 S.W.2d at 864. *See also State v. Winters,* 525 S.W.2d 417, 423 (Mo.App.1975) (finding that an objection "at the time of the alleged error is the fundamental basis for appellate review").

In contrast, the defendant refers us to *State ex rel. Westfall v. Gerhard,* in which the court ruled that the trial court did not err in dismissing the charges against the defendant when the prosecutor failed to make an opening statement and instead proceeded with direct examination of its only witness. 676 S.W.2d at 38. The *Gerhard* court ruled that the trial court did not err in

dismissing the charges against the defendant, despite the fact that: "(1) the state had fulfilled the purposes of an opening statement by other means; [and] (2) [the defendant] waived objection to the requirement of an opening statement because he failed to move to dismiss the case until after the state completed the direct examination of the police." *Id.* Without addressing these contentions, the court ruled that since the prosecutor failed to make an opening statement, the trial court did not err in dismissing the charges. *Id.* at 39.

The state contends that the *Gerhard* decision was incorrectly decided in that: (1) a defendant is required to make a timely objection to the state's failure to make an opening statement so that the state be given an opportunity to remedy the deficiency, (*Hood,* 680 S.W.2d at 423; *State v. Smith,* 741 S.W.2d 778, 780 (Mo.App.1987)); and (2) the mere failure to make an opening statement does not entitle a defendant to reversal without a showing of prejudice from that failure. *Wimberly,* 700 S.W.2d at 168; *Hood,* 680 S.W.2d at 423–24; *Williams,* 575 S.W.2d at 864; *Little,* 572 S.W.2d at 874.

Notwithstanding the *Gerhard* holding, we agree with the trial court that the defendant here did not suffer prejudice. The state's key witnesses, Craig and Gottman, had been deposed by the defendant prior to trial. Moreover, another state witness was interviewed at some length before trial by the defendant's attorney. Finally, the defense had received Craig's lengthy alcohol influence report which contained a narrative report of the facts surrounding the arrest of the defendant. As such, the defendant was fully apprised of the state's case and does not now claim that he was surprised by the state's evidence, nor does he claim that his defense was prejudiced by the lack of an opening statement.[4] Point denied.

■ The defendant's final point is that the trial court erred in failing to sustain his motion for acquittal, in that the state failed to prove the defendant's two prior alcohol-related convictions at trial. Such proof was

---

4. Furthermore, the claim of prejudice is seriously diminished when no objection is made until

prompted by the assistant prosecutor's mentioning the omission.

necessary to find him to be a "persistent offender" and, as such, guilty of a class D felony pursuant to §§ 577.023.1(2) and 577.023.3.

The case was tried to the court. The state attempted to prove that the defendant was convicted of two prior alcohol-related driving offenses. Evidently, the state intended to introduce such evidence by certified copies of docket sheets and charges. However, the state was unsuccessful in admitting the evidence at trial. Instead the court heard the evidence post-trial, prior to sentencing.

The defendant argues that, as a matter of policy, this court should acquit the defendant. In support of his argument, the defendant refers us to *State v. Johnson,* in which the court reversed the defendant's conviction of driving while intoxicated, third offense, because although the defendant admitted on the stand to at least two prior convictions for driving while intoxicated, the state's exhibits establishing the convictions were not admitted into evidence, and a subsequent hearing was never held. 710 S.W.2d 908, 909–10 (Mo.App.1986).[5] The jury found the defendant guilty. *Id.* at 910. The trial court found the defendant to be a prior offender, convicted the defendant of driving while intoxicated, third charge, and sentenced the defendant. *Id.* On appeal, the court determined that the state's proof failed, however, in that "no evidence was adduced that the prior drunk driving offenses or convictions took place within ten years" pursuant to the requirements of the statute then in effect. *Id.* at 911.

This case does not support the defendant's assertion that because the state attempted, but failed to prove his prior convictions at his trial, the judge erred in denying his motion for acquittal. The *Johnson* case stands for the proposition that the statute in effect at the time required that prior convictions be within the past ten years—a fact which the state failed to prove.

In the matter before us, the state successfully established the defendant's previous convictions, post-trial. The state is specifi-

cally permitted to establish persistent and prior offender status post-trial, pursuant to § 577.023.7, which states that "[i]n a trial without a jury ... the court may defer the proof in findings of such facts to a later time, but prior to sentencing." Sentencing-enhancement proceedings have been held constitutional, as "double jeopardy does not attach to Missouri's non-capital persistent offender sentencing." *State v. Cobb,* 875 S.W.2d 533, 535 (Mo. banc 1994). *See also State v. Cobb,* 926 S.W.2d 561, 562 (Mo.App. 1996) (ruling, after remand, that the Missouri Supreme Court has determined that "double jeopardy does not bar the state from presenting evidence at resentencing to prove appellant is a persistent offender"). The defendant's contention that because the state attempted, but failed to prove the prior convictions at trial, it is therefore precluded from proving the convictions at a subsequent hearing prior to sentencing, is meritless. Point denied.

Judgment of convictions affirmed.

LAURA DENVIR STITH and EDWIN H. SMITH, JJ., concur.

---

5. *State v. Johnson* has been overruled on other grounds. *State v. O'Brien,* 857 S.W.2d 212, 221 n. 3 (Mo. banc 1993).